Don Lee BASS and Jerome Clarence Fernandez, Plaintiffs–Appellees Cross Appellants,

v.

INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, etc., Local No. 582, et al., Defendants–Appellants Cross Appellees.

No. 79–1462.

United States Court of Appeals, Fifth Circuit.

Nov. 17, 1980.

Rehearing Denied Jan. 6, 1981.

**1060**

Louis L. Robein, Jr., New Orleans, La., for defendants appellants cross appellees.

J. Arthur Smith, III, Baton Rouge, La., for plaintiffs–appellees cross appellants.

Before RUBIN, HENDERSON and REAVLEY, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Apprentices enrolled in an apprenticeship training program set up under the provisions of the Labor Management Relations Act obtained a jury verdict for damages against the union participating in the program and the apprenticeship committee managing it on the ground that they were improperly expelled. The union and the committee assert errors in the jury charges and the committee contends that it was not subject to the court's jurisdiction. Finding no prejudicial error in the jury charges, we affirm the judgment against the union. However, because the plaintiffs have failed to establish a basis for federal jurisdiction against the apprenticeship committee, we dismiss the claims against it.

**I.**

In May 1976, Don Lee Bass, who had for several years been a member of Local 582, International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, and Jerome Clarence Fernandez, who had then recently applied for union membership but who had not been formally accepted, were participants in the regional boilermaker apprenticeship program administered by the South Central Area Apprenticeship Committee (SCAAC). SCAAC is a trust fund, financed by employer contributions made pursuant to a provision in the collective bargaining agreement in force between the union and employers in the states of Texas, Louisiana, New Mexico, Oklahoma and Arkansas. Its managing committee is composed of persons designated in equal numbers by the employers and the union.[1]

The apprenticeship program consists of correspondence and classroom instruction, periodic testing and work on the job as an apprentice. As part of their work training, Bass and Fernandez, each of whom lived in Baton Rouge, Louisiana, were assigned by the Local's business manager to a union job at Papco, a paper plant in Bastrop, Louisiana, almost 200 miles from their homes.

Construed most favorably to them, as the jury verdict in their favor now requires, what then happened is as follows. After working in Bastrop a few weeks, both Bass and Fernandez asked the union steward at Papco whether they could be laid off so they might be assigned to a jobsite nearer their homes. The union steward subsequently informed them that he had made appropriate arrangements: they should return to their homes and then report to the Baton Rouge hiring hall the following week. With this understanding, Bass and Fernandez left work, returned home and duly reported to the hiring hall. When they arrived at the hall, however, the local's business manager told them that their absence from the Bastrop job was unauthorized and they had, therefore, been terminated from the apprenticeship program and automatically expelled from the union.

Although Bass and Fernandez sought union help to correct the situation, they could get no remedial action. They then filed an action, seeking a jury trial, against Local 582 in the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana. Defendants removed the suit to

---

1. The apprenticeship training program was set up under the protective arm of a special provision in the Labor Management Relations Act of 1947, as amended by the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 186. The LMRA forbids all payments by an employer to a representative of his employees and punishes violations with a criminal penalty. 29 U.S.C. § 186(d). *See generally United States v. Ryan,* 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335 (1956). There are several exemptions to this general prohibition, however, including one for employer payments to a trust created for the purpose of establishing apprenticeship programs. 29 U.S.C. § 186(c)(6).

the United States District Court. After removal, plaintiffs amended the complaint, and joined SCAAC as a defendant. At the conclusion of a jury trial, a verdict was returned against Local 582 and SCAAC. Both the union and SCAAC appeal, asserting separate bases for their efforts to overturn the verdict. We consider first the issues relating to the union.

## II.

If Bass and Fernandez were union members, the union owed them special duties, created both by the union constitution and by statute. The union stipulated that Bass was a member, but contended that Fernandez had not yet been accepted. The district judge, therefore, submitted to the jury the question whether Fernandez had become a member.

Fernandez had applied for union membership, but the union contended that he had not satisfied other membership requirements. During a portion of his instruction on Fernandez's membership status, the district judge read the union security clause[2] contained in the Collective Bargaining Agreement then in force. That clause required all employees to "be or become members of the union" seven days after the date of their employment.[3] The security clause does not, of its own force, result in union membership; the employee might refuse to

tender dues and subject himself to discharge. The clause neither compels an employee to participate actively in the union nor requires a union to accept the employee.[4] Several of the union's witnesses testified that, before the employee became a union member, certain requirements precedent to union membership were required.[5]

The union submitted no request for a special charge on the effect of the union security clause. After the jury instructions were completed, however, the union objected to the unqualified reading of the security clause on the ground that it gave a misleading impression of the law and of the basis for determining whether in fact an employee had become a union member, by implying that Fernandez became a union member seven days after he commenced employment.

The standard for assessing a jury charge is not academic perfection. The trial judge is not bound to parrot either counsel or appellate courts. As we have repeatedly stated, his wide discretion permits him to select his own words and to charge in his own style. *Smith v. Borg–Warner Corp.*, 626 F.2d 384 (5th Cir. 1980); *Baker & Co. v. Preferred Risk Mutual Insurance Co.*, 569 F.2d 1347 (5th Cir. 1978); *Coughlin v. Capital Cement Co.*, 571 F.2d 290, 300 (5th Cir. 1978). Provided only that he communicates the substance of the law correctly,

2. "Now, in the Collective Bargaining Agreement, Article 3 provides that 'as of the effective date of this agreement, all employees under the terms of this Agreement must be or become members of the union seven days thereafter.' That means seven days after employment. 'The employees hired after the effective date of this agreement shall be or become and remain members of the Union seven days after their date of employment in accordance with the provisions of the National Labor Relations Act.'"

3. When Bass and Fernandez were expelled, such a union security clause was permitted in Louisiana and was, therefore, valid under the LMRA. Section 8(a)(3) of the LMRA, 29 U.S.C. § 158(a)(3). Later, in 1976, Louisiana adopted a "Right to Work" law, La.Rev.Stat. Ann. §§ 23:981–987, providing that no person shall be required, as a condition of employment, to be a union member or to pay dues or

other charges. *See* Section 14(b) of the LMRA, 29 U.S.C. § 164(b).

4. Unions are given the right to impose non-discriminatory requirements on prospective members. The purpose of a union security clause is to permit unions to collect dues from all employees who receive the benefits of union representation and not to establish automatically an employee's membership in the union. *See Radio Officers' Union v. N.L.R.B.*, 347 U.S. 17, 41, 74 S.Ct. 323, 336, 98 L.Ed. 455, 477 (1954); *Union Starch & Refining Co. v. N.L.R.B.*, 186 F.2d 1008, 1011–1013 (7th Cir.), *cert. denied*, 342 U.S. 815, 72 S.Ct. 30, 96 L.Ed. 617 (1951). *See generally* R. Gorman, Basic Text on Labor Law: Unionization and Collective Bargaining 650 (West 1976).

5. These requirements, imposed by the union's constitution, included acceptance by the international union and tender of an initiation fee.

appellate courts do not monitor his phrases. Only if the trial judge's instructions to the jury, taken as a whole, give a misleading impression or inadequate understanding of the law and the issues to be resolved, is a new trial required. *Delancey v. Motichek Towing Service, Inc.*, 427 F.2d 897 (5th Cir. 1970); *Gordon Mailloux Enterprises, Inc. v. Firemen's Insurance Company*, 366 F.2d 740 (9th Cir. 1966).

The trial judge did not merely read the union security clause. He covered the provisions of the union constitution and by-laws, including those portions imposing conditions precedent to union membership. He adequately informed the jury that it was required to decide whether Fernandez was a union member and he submitted a special interrogatory on the question.[6] The union security clause was not irrelevant; the existence of the duty of an apprentice to join the union was of evidentiary value in appraising the testimony concerning whether he had properly applied for membership, whether he had complied with the union's requirements and whether the union did or did not exact literal fulfillment of its constitutional provisions.

■ Considering the jury charge concerning union membership as a whole, we fail to perceive in it reversible error. Taken in its entirety, it gave a reasonable summary of applicable legal principles and put the issue of Fernandez' union membership fairly to the jury. Therefore, we affirm the jury verdict finding that Fernandez was a union member.

### III.

One of the principal allegations asserted by Bass and Fernandez in their complaint was breach of the union's duty of fair representation (DFR) by their summary expulsion from the apprenticeship program and the union. The instructions that were given are challenged on the basis that they dwelt on such a duty and that the union, under the circumstances complained of, did not owe the DFR to Bass and Fernandez. Carefully read, however, the jury charge properly distinguished among the duties the union owes its members, the duty the union owes persons in the apprenticeship program and the duty due persons whom it represents in collective bargaining.

■ Sections 8(b) and 9(a) of the Labor Management Relations Act, 29 U.S.C. §§ 158(b), 159(a), empower a union that represents a majority of the employees in an appropriate bargaining unit to act as the exclusive representative of all the employees in collective bargaining. Because the union acts as agent of all the employees, it owes each of them, whether or not a union member, the duty of fair representation. *Sanderson v. Ford Motor Co.*, 483 F.2d 102 (5th Cir. 1973); *see also In re Carter*, 618 F.2d 1093 (5th Cir. 1980). The scope of this duty was outlined in *Vaca v. Sipes*, 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842, 850 (1967). The Supreme Court there held that, when a union acts as the collective bargaining agent of its members, it is obliged "to secure the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty and to avoid arbitrary conduct." Id. at 177, 87 S.Ct. at 910, 17 L.Ed. at 850.

■ The existence of the DFR, however, does not permit federal court scrutiny of all of a union's internal affairs. Because the DFR is imposed on the union as a result of its position as exclusive bargaining representative, it applies only to union conduct arising from the union's position as representative. Thus, in *Smith v. Local No. 25, Sheet Metal Workers*, 500 F.2d 741, 746 (5th Cir. 1974), we stated that the union owes

---

**6.** The charge clearly stated that it was for the jury "to determine, whether or not under the various agreements that these people worked, whether or not the status of Mr. Fernandez at the time of the incident involved in this case— whether or not he had reached the point of being considered a member of this union for the purpose of being protected by the [Landrum–Griffin] Bill of Rights. That is his contention, of course. The defendants say he had not. That is the factual issue for you to decide." The judge then posed a special interrogatory: "Was Jerome Fernandez a member of the union?" The jury answered, "Yes."

"the duty to represent fairly the interest of each employee in the unit *in dealings with the employer.*" (Emphasis supplied.) Therefore, union conduct that affects only an individual's relationship within the union structure is not circumscribed by the constraints of the DFR. Subject to the provisions of its constitution and bylaws and the constraints imposed by statute, the union is necessarily invested with broad discretion to make internal union decisions in a manner the leadership considers beneficial both to the union membership at–large and to any individuals involved.

■ Local 582 did not interfere in any way with the relationship between Bass and Fernandez, as employees, and Papco, as their employer. Bass and Fernandez elected to terminate their work with Papco and never sought reemployment with that company. Bass and Fernandez do not charge that Local 582 failed to represent them fairly in dealing with any other employer. Nor do they charge that the union was a collective bargaining agent for persons in the apprenticeship program. That program, indeed, employed no one. We conclude, therefore, that the union did not owe a duty of fair representation to Bass and Fernandez under the facts presented in this case.

■ The union, however, owes other duties to its members, both statutory, arising under the Labor Management Reporting and Disclosure Act (LMRDA), and those incumbent on it by virtue of its constitution and bylaws. The Labor Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(5), provides, in a paragraph added by the Landrum–Griffin Act, that a union member may not be "fined, suspended, expelled, or otherwise disciplined" without union compliance with the procedural safeguards set forth in the Act.[7] The union's constitution also protects union members against summary expulsion.[8]

The trial court's charge to the jury adequately explained the duties that the union owes to its members. Because these duties are greater than those owed non–members,[9]

7. No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.
29 U.S.C. § 411(a)(5).

8. Section 2(a) ... Charges shall be set forth in writing and a copy of the charges served upon the individual or body being charged by registered or certified mail, with return receipt requested to last known address, and a copy thereof filed with the President of the Local Lodge and the International President. Charges shall be set forth with sufficient definiteness to inform the accused of the nature and circumstances of the violations complained of, together with a reference to the particular subsection of Section 1 of this Article under which the charges were brought. (b) After receiving such formal charges, the Local Lodge President or the International President will, within fourteen (14) days, establish a date for an informal hearing between the parties directly involved and a sincere effort will be made to resolve the matter at this point. ... However, if the matter is not concluded on such informal basis, the Local Lodge President or the International President, as the case may be, shall fix a time for trial which shall be not later than forty-five (45) days following receipt of such charges and shall give the accused at least fifteen (15) days notice of the time and place of a hearing on such charges at which such accused shall appear and defend. If the accused fails to appear, unless postponement has been granted for good cause, the trial shall nevertheless proceed. Similar notice shall be given the charging party and all directly involved parties.
Article XVII, Constitution of the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers (1973).

9. In addition to his charge concerning Section 411 and the union's constitutional provisions, the district judge charged the jury as follows:
The next question is the question of union representation. Now, ordinarily plaintiffs say that they were improperly represented by the union. Now, ordinarily the question of improper representation by the union of its members comes up in connection with disputes between a member and the company; and in that instance, of course, the union is required to represent its employees–its members in conflicts with the employer. Here we have a little different situation. We have the question of the employee, a union member–if you find them to be members–you have the problem of a union member in a dispute not with the employer, but in a dispute with the

**1064**

the jury verdict determining that the union is liable to Bass and Fernandez is also affirmed.

## IV.

After the jury had returned a verdict in favor of Bass and Fernandez, the court submitted separately to it the question of damages, a procedure that we have approved.[10] The union contests an allegedly prejudicial substantive comment made during the charge on the issue of damages.

■ During the course of the damage portion of the trial, the union argued that Bass and Fernandez should have attempted to secure work through union hiring halls and that their damages should be reduced by the amounts they would have earned had they made a good faith effort to do so. The union adduced testimony with regard to this alleged lack of mitigation and requested that the jury be charged that, as a matter of law, a construction union hiring hall must allow both union members and non–members to use the union's job referral procedures and that this legal requirement should be considered in determining whether Bass and Fernandez attempted to lessen their damages by making a good

faith attempt to secure employment. The requested charge was correct. Hiring halls are required to refer both members and non–members to jobs, without discrimination. *Local 357, Teamsters v. NLRB*, 365 U.S. 667, 81 S.Ct. 835, 6 L.Ed.2d 11 (1961). *See also NLRB v. Houston Chapter, Associated General Contractors*, 349 F.2d 449 (5th Cir. 1965), *cert. denied*, 382 U.S. 1026, 86 S.Ct. 648, 15 L.Ed.2d 540 (1966) ("The hiring hall is to be administered on a non–discriminatory basis as between union members and non–union members").

The trial judge gave a charge that was a fair resume of the principles of mitigation. Immediately after doing so, however, he commented, "it is simply a question for you [the jury] to decide as to exactly how open a union hall is to a non–union member." The union argues that this comment was not supported by law and improperly allowed the jury to determine for itself whether Bass and Fernandez could have gained employment through the hall.

■ As a common law judge a federal district judge has the right, and sometimes indeed the duty, to comment on the evidence, to direct the jurors' attention to pertinent points and to provide assistance in

---

union itself. So, of course, the type of representation required would be entirely different, because obviously you could not require the union to represent its members against itself in an internal dispute.

So the question of proper representation–when you're asked the question here: Did the defendant, South Central Area, properly *represent the interests of the plaintiffs in this* case, we have reference, in connection with that question, that even though it is an internal dispute between the member and the union, the union is still obligated to protect the interest and not fight the interest of its members as afforded them under the law and under its own Constitution and By–Laws or Collective Bargaining Agreements.

So when this question is asked: Did they properly represent their interests, it has reference to representation in accordance with affording them and seeing that they were afforded the rights contained in the law, the statute, the Constitution and agreements of the union itself, rather than being their attorney, so to speak, in connection with a dispute with an employer. So that will be the criteria that you used in deciding that question.

Instruction on this lesser duty, whether or not it was owed to apprentice program participants, is irrelevant. The jury found that Fernandez was a union member and the union stipulated that Bass was a member. The union owed its members greater explicit statutory duties than those impliedly imposed by its position as collective bargaining agent or partner in creating the apprenticeship training program. Therefore, because of the nature of the duties owed by the union to Bass and Fernandez, as members, we pretermit discussion of the question whether the union's involvement with the apprenticeship program created a duty, akin to the DFR, to deal fairly with those apprentice program participants who were not union members. If Bass or Fernandez were found not to have been union members, this question would require resolution.

**10.** *See, e. g., Nettles v. General Accident Fire & Life Assurance Corp.*, 234 F.2d 243 (5th Cir. 1956); *Swofford v. B & W, Inc.*, 336 F.2d 406 (5th Cir. 1964). *See also* Rule 42(b), Fed.R. Civ.P.; C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2390.

determining "where the question and knot of the business lies." M. Hale, The History of the Common Law of England 291, 92. The judge's comments, of course, carry great weight and his discretion to comment on the evidence "is not arbitrary and uncontrolled, but judicial, to be exercised in conformity with the standards governing the judicial office." *Quercia v. United States*, 289 U.S. 466, 470, 53 S.Ct. 698, 699, 77 L.Ed. 1321, 1325 (1933). The judge, therefore, must be fair and impartial when he comments substantively on the evidence.

The question presented then, is whether the district judge's statement concerning union hiring halls went beyond his discretion and suggested to the jury the conclusion of ultimate fact they should reach, thereby effectively withdrawing the issue of mitigation of damages from them. *See McCullough v. Beech Aircraft Corp.*, 587 F.2d 754 (5th Cir. 1979). In analyzing a complaint such as this on appeal, "the test is not whether the charge was faultless in every particular but whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues." *Coughlin v. Capital Cement Co.*, 571 F.2d 290, 300 (5th Cir. 1978) *quoted in Smith v. Borg–Warner Corp.*, 626 F.2d 384. (5th Cir. 1980).

Although the judge refused the union's request for an instruction that, as a matter of law, hiring halls must·be open to union members and non–members alike, he instructed the jury that the law required that non–union members be given access to the hall and he stated clearly that the question whether hiring halls were open to non-members was for the jury to decide. He cautioned further that he did not know "whether or not there is evidence" concerning the hiring halls availability to non-members [11] and he concluded his charge by explaining to the jury what issues pertinent to litigation they should consider if they thought the hiring hall was, in fact, open to everyone. Moreover, at the conclusion of his charge he again instructed the jury that the decision was for them and that they should not give account to his evidentiary comments. These admonitions tempered any prejudicial effect that the comment might have had.

We cannot say the judge's comment concerning the hiring halls affected the juror's understanding of their duty to resolve the factual issue of mitigation. The comment did not preclude "a fair and dispassionate consideration of the evidence." *Quercia v. United States*, 289 U.S. 466, 472, 53 S.Ct. 698, 700, 77 L.Ed. 1321, 1326 (1933). The judge's comment, considered as part of the charge in this case, taken as a whole, *see Delancey v. Motichek Towing Service, Inc.*, 427 F.2d 897, 901 (5th Cir. 1970), did not constitute an abuse of discretion sufficient to require reversal. Therefore, the judgment against the union is affirmed.

## V.

We turn now to the question of jurisdiction over SCAAC. The amended complaint by which SCAAC was made a defendant asserts jurisdiction on the basis of the Landrum–Griffin Bill of Rights (with jurisdiction predicated on 29 U.S.C. § 412), of the existence of a suit against a labor organization, SCAAC, for violating its DFR (with jurisdiction predicated on 28 U.S.C. § 1337),[12] of the portion of the LMRA regulating employer contributions to labor organizations (29 U.S.C. § 186), and of the existence of a federal question (28 U.S.C. § 1331).

### A. *Section 412.*

In order to provide a federal forum for persons alleging violations of rights secured

---

11. There was no direct evidence that cast doubt on the non–discriminatory operation of construction hiring halls. Some evidence was presented, however, that suggested Mr. Fernandez was unable, because he was not a union member, to secure work through one of the construction trade hiring halls in Baton Rouge.

12. Because the union, under the circumstances here presented, does not owe Bass and Fernandez a DFR it follows *a fortiori* that such a duty cannot be asserted against SCAAC.

by the so-called "Landrum–Griffin Bill of Rights," 29 U.S.C. § 411, the Labor Management Reporting and Disclosure Act of 1959, granted jurisdiction to federal courts to award appropriate relief in such cases. 29 U.S.C. § 412. Section 411, as discussed previously, provides certain rights to members of "*labor organizations.*"[13] Section 411(a)(5), the specific provision alleged to have been violated by SCAAC, protects a member against improper disciplinary action.

SCAAC is not a union. It has no members. It represents no one in collective bargaining. It does not deal with employers concerning conditions of employment on behalf of any employees. It has a legal identity separate from any union. As we have already pointed out, it is administered by a managing committee appointed in equal numbers by management and labor. For the same reasons that the educational trust considered by us in *Miller v. Holden*, 535 F.2d 912 (5th Cir. 1976), was not a labor organization, SCAAC was not.

■ Seizing upon our reservation, in *Miller v. Holden*, of the "abstract issue of whether an employer who is merely an alter–ego of a union can be sued under the LMRDA," 535 F.2d at 914, the plaintiffs also contend that, even if SCAAC is not itself a labor organization, it is the alter ego of the union, hence vicariously a labor organization. In response to this argument, the district judge stated that he had "tentatively" held the apprenticeship committee to be "merely the alter ego of the union." Viewing this conclusion not merely as tentative but final and according the benefits

of the presumption of correctness to the district judge's findings, however, we find no facts of record that support it.[14] Therefore, the court lacked jurisdiction of those claims alleging violation of Section 411(a)(5).

### B. Section 186 and Federal Question Jurisdiction

The answers to the questions whether jurisdiction against SCAAC can be founded on Section 186(e), 29 U.S.C. § 186(e), or on the existence of a federal question, 28 U.S.C. 1331, are to some degree interrelated. In examining the claim that jurisdiction is granted by Section 186(e), we must read that subsection in context. Section 186, part of the Labor Management Relations Act, as amended by the Labor Management Reporting and Disclosure Act of 1959, not only prohibits, but penalizes as criminal, employer contributions to any labor organization. It is designed to prohibit an employer from making payments to any representative of its employees, to any labor organization or to an officer of a labor organization and certain payments, other than wages and permissible fringe benefits, even to its employees. 29 U.S.C. § 186(a).

Congress, however, wished to permit contributions to a few clearly delineated employer benefit programs. Therefore, it excepted from the sweeping prohibition of Section 186(a), a number of employer contributions negotiated by unions for purposes considered proper, including payments made for the purpose of defraying costs of apprenticeship training programs.[15]

---

**13.** For purposes of the LMRDA, a labor organization is defined by 29 U.S.C. § 402(i) as an:

"organization engaged in an industry affecting commerce and includes any organization of any kind, any agency, or employee representation committee, group, association, or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment, and any conference, general committee, joint or system board, or joint council so engaged which is subordinate

to a national or international labor organization, other than a State or local central body.

**14.** Once again, as in *Miller v. Holden*, 535 F.2d 912 (5th Cir. 1976), we leave the hypothetical question for resolution when it is no longer theoretical.

**15.** (c) The provisions of this section shall not be applicable, ... (6) with respect to money or other thing of value paid by any employer to a trust fund established by such representative for the purpose of pooled vacation, holiday, severance or similar benefits, or defraying costs of apprenticeship or other training programs. . . .

As part of this program, both to forbid most employer payments and to regulate those permitted, Congress enacted Section 186(e), which provides: "The district courts of the United States . . . shall have jurisdiction, . . . to restrain violations of this section."

■ It is evident that this section does not authorize federal courts to entertain damage suits against apprenticeship programs. Not only are its terms restricted to injunctive actions, but its purpose is limited to authorization of actions that would present violation of the objectives of Section 186. Bass and Fernandez did not complain that the trust fund failed to comply with the requirements of Section 186 and they did not seek to restrain any violation of that statute. They request no injunctive relief. Further, we see no basis to imply, nor does the complaint allege, a private cause of action for any individual who complains of the mismanagement of a program whose finances are derived from a contribution permitted by Section 186.[16] Therefore, the district court did not have jurisdiction of this claim for money damages under Section 186(e).[17] *Cf. Snider v. All State Administrators*, 481 F.2d 387 (5th Cir. 1973) ("district court jurisdiction under [Section 186(e)] is limited to restraining future violations of the statute.")

Section 186(c)(6) may, however, imply an independent federally created duty that the trust instrument create a genuine fiduciary relationship and that the trust be created and administered solely for the purposes contemplated by the statute. We do not here ignore the possibility that a federal question might exist if the contention were made that the trustees, by arbitrary or capricious conduct, violated the terms of the statute and that the statute implies a right of action for damages, despite the fact that it expressly authorizes only suits to restrain violation of its provisions.[18] It is unnecessary for us to resolve that question here for neither the complaint nor the evidence adduced at trial makes any such claim. At most, it may be said there is a peripheral issue whether the alleged violation of the trustees' duties was also a federal statutory violation.

■ Finally, it might be argued that a federal question exists by virtue of the incorporation in Section 186(c)(6) of state fiduciary obligations. After reviewing the cases considering the problem of jurisdiction when state obligations are intertwined with federal statutes that do not create explicitly a federal remedy, Professor Mishkin has proposed a test: for original federal jurisdiction there must be a "substantial [federal] claim founded 'directly' upon federal law." Mishkin, The Federal "Question" in the District Courts, 53 Col.L.Rev. 157, 168 (1953). *See also Johnston v. Byrd*, 354 F.2d 982 (5th Cir. 1965). The claim here made was solely that the trustees violated duties imposed by the trust instrument itself and by their fiduciary obliga-

29 U.S.C. § 186(c)(6).

**16.** *See generally Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979); *Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074 (5th Cir. 1980).

**17.** Diversity was not asserted as a basis for jurisdiction nor is it established by the record. The citizenship of unincorporated associations for diversity purposes is that of each of its members. *Thomas v. Board of Trustees of Ohio State University*, 195 U.S. 207, 25 S.Ct. 24, 49 L.Ed. 160 (1904) (governing board); *United Steelworkers of America v. R. H. Bouligny, Inc.*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965) (labor union); *Larwin Mortgage Investors v. Riverdrive Mall, Inc.*, 392 F.Supp. 97 (S.D.Tex.1975) (real estate investment trust).

*See generally* 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 3630. The record does not indicate the citizenship of the six trustees. Therefore, complete diversity of citizenship has not been shown to exist and jurisdiction cannot rest on 28 U.S.C. § 1332.

**18.** *Cf. Roark v. Lewis*, 401 F.2d 425 (D.C.Cir. 1968); *Lamb v. Carey*, 498 F.2d 789 (D.C.Cir.) *cert. denied, sub nom. Carey v. Davis*, 419 U.S. 869, 95 S.Ct. 128, 42 L.Ed.2d 108 (1974); *Mestas v. Huge*, 585 F.2d 450 (10th Cir. 1978) (cases recognizing federal court jurisdiction to determine whether the actions of trustees of pension funds were arbitrary or capricious and thereby violative of 29 U.S.C. § 186(c)(5)).

tions. These are clearly state claims, and are not founded upon federal law. Absent any basis for federal jurisdiction, a state court might entertain that action.

Apprentices like Bass and Fernandez are not, therefore, left without a forum for their grievances. They were beneficiaries of the SCAAC trust fund. They may have an action for the violation of the fiduciary duties that spring from the trust. That duty, however, is grounded upon state laws of fiduciary obligations.

For these reasons and because no assertion of pendent jurisdiction appears in the complaint, we conclude that the district court lacked jurisdiction of the claims against SCAAC either under Section 186(e) directly or as questions arising under a federal law.

For the foregoing reasons, we AFFIRM the judgment against the union and REVERSE the judgment against SCAAC and dismiss the complaint against it.