Johnny L. TURLINGTON, et al.,
Plaintiffs-Appellants,

United States Fidelity & Guaranty Company, Intervenor-Appellant,

v.

PHILLIPS PETROLEUM COMPANY,
Defendant-Appellee.

No. 84–2614.

United States Court of Appeals,
Fifth Circuit.

July 25, 1986.

Gary Stephens, W. James Kronzer, Houston, Tex., for plaintiffs-appellants.

Gustafson, Upchurch & Venzke, Thomas M. Fountain, Houston, Tex., for intervenor U.S. Fidelity & Guar.

Eugene C. Marshall, Kenneth E. Rogers, William M. Kaufman, Houston, Tex., William G. Paul, Clifford J. Roberts, Bartlesville, Okl., for defendant-appellee.

Before GARWOOD, HIGGINBOTHAM and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge:

Following a jury trial of their personal injury claims brought in this Texas diversity suit, plaintiffs-appellants, injured employees of Crown Central Petroleum Company ("Crown Central"), and intervenor-appellant, United States Fidelity & Guaranty Company, appeal a jury verdict for defendant-appellee Phillips Petroleum Company ("Phillips"), claiming errors in the district court's instructions to the jury. We affirm.

### Facts and Proceedings Below

During the 1930's, Phillips developed a chemical process to produce "alkylates," the end result of a chemical process whereby hydrofluoric acid acts as a catalyst on certain hydrocarbons. A type of these alkylates was subsequently used as aviation fuel during World War II. These alkylates are currently used as octane enhancers for gasoline, recreational fuels (such as charcoal lighter fluids), and solvents.

Following World War II, Phillips licensed its process to other refiners for use in hydrofluoric plants, and seventy-two such agreements were concluded. In 1964, Phillips reached an agreement with Crown Central. Crown Central then used the information obtained from Phillips to build an alkylation unit, and it hired Foster-Wheeler, an outside firm, to draw up mechanical designs for the unit and later to construct it. Under the contract between Phillips and Crown Central, Phillips gave Crown Central both the technical information needed to run the unit and the nonexclusive use of its patents on the alkylation process. Phillips also gave Crown Central technical advice, a process "flow sheet," material specifications and recommendations, and an operating and safety manual for the unit. Additionally, Phillips trained the first Crown Central operators of the unit.

Even after the unit became operational, Phillips gave Crown Central occasional advice about the technical aspects of the alkylation process and the operation of the plant. Crown Central, however, was free to reject this advice, for it was the ultimate arbiter of the unit's operations. Phillips has never owned any part of the unit. Because of its final authority over the unit, Crown Central was free to make any alterations that it felt were necessary to the continued profitable operation of the unit, with or without the advice of Phillips. Crown Central did in fact make such modifications, one of which altered the unit's maximum designed feed temperature and rate. This was done despite Crown Central's knowledge of the corrosion problems these changes could cause. Crown Central also made changes to the process itself, changes that eventually made the Phillips operating manual obsolete. Phillips claimed that these changes were made without its knowledge or its consent.

In 1978, many years after the unit had become fully operational, Phillips, at Crown Central's request, sent its employee Harry Bush, an equipment inspector, to help Crown Central conduct an inspection of the alkylation unit. Bush found severe corrosion problems and warned Crown Central that immediate repairs were needed. Afterward, in May 1981, Clyde Archer, a Crown Central inspector, filed a report which stated that one of the feedlines to the unit was dangerously thin and needed replacement. Despite the recommendations of Archer and of Crown Central's senior maintenance engineer, Crown Central's management decided not to shut the unit down and repair the pipe.

On June 22, 1981, the unit was shut down for unrelated repairs, but the corroded feedline was not replaced even though a replacement line was on hand. Around midnight the "stillman" in charge of the unit was ordered to start the unit, but he refused to do so because of its dangerous condition. A Crown Central supervisor was awakened and dispatched to the unit and he ordered the plant started. The stillman complied. A fire broke out a few hours later, and plaintiffs-appellants were injured. Plaintiffs-appellants claimed be-

low that the excessively thin feeder line caused the fire.

Plaintiffs had previously sought, and received, benefits under the worker's compensation laws of Texas, following which they filed this diversity suit against Phillips. They sought recovery under products liability, negligence, and breach of warranty theories. A jury trial ensued.

The case was submitted to the jury on special interrogatories, the jury's answers to which comprised the entire verdict. There was no general verdict. Interrogatories one through six were in substance as follows, each calling only for a "yes" or "no" answer:

1. did Phillips supply Crown Central "with a product, the HF Alkylation Process, which was defectively designed and unreasonably dangerous";

2. conditioned on a "yes" answer to one, whether such product "was a producing cause of the occurrence in question";

3. was "Phillips ... negligent";

4. conditioned on a "yes" answer to three, whether such negligence "was a proximate cause of the occurrence in question";

5. did Phillips breach "any implied warranty of fitness for a particular purpose";

6. conditioned on a "yes" answer to five, whether such breach "was a proxi-mate cause of the occurrence in question."

The jury answered "no" to each of interrogatories one, three, and five, and, as required by the conditioning instructions stated on the verdict form, did not answer interrogatories two, four, or six. The remaining interrogatories (which concerned contributory negligence on the part of plaintiffs, the comparison of any such to any negligence of Phillips, actual damages, gross negligence on the part of Phillips, and exemplary damages) were also all unanswered, as required by the conditioning instructions on the verdict form. The verdict form did not contain any definitions.

Judgment was entered for Phillips on the verdict and this appeal followed.

Appellants now claim that the district court committed reversible error in (1) instructing the jury on "sole cause," an issue appellants contend is no longer viable in Texas products cases, (2) refusing to instruct the jury about Phillips' strict liability for "inherently dangerous activities", and (3) refusing to properly instruct the jury as to Phillips' contractual duties with Crown Central.

## Discussion

### I. Sole Cause Instruction

The district court in this case submitted a sole cause instruction, as part of its general charge, which was applicable to all three theories of recovery, negligence, products liability, and breach of warranty.[1] Appel-

---

1. The district court instructed the jury as follows:

"In addition to its other defense claims, defendant alleges that the acts or omissions of Crown Central Petroleum Corporation were the sole cause of the explosion, fire or resultant injuries to plaintiffs. In that regard you are instructed that there may be more than one cause of an occurrence, but there can only be one sole cause. If an act or omission of any person not a party to the suit was the sole cause of the occurrence, then no act, omission, or product of any party to the suit could have been a cause of the occurrence.

"Specifically, defendant claims that Crown Central Petroleum Corporation's acts or omissions were the sole cause of the occurrence in question in the following particulars:

"1. Crown Central Petroleum Corporation, acting on its own, has made substantial and significant modifications to the unit.

"2. Crown Central Petroleum Corporation has not been operating the HF Alky Unit No. 1 in accordance with the Operating Manual for that unit furnished by Phillips in 1964.

"3. Crown Central Petroleum Corporation knew for many years that it was experiencing severe corrosion problems in the feed area of the HF Alky Unit No. 1 and knew that this feedline was dangerously thin due to internal corrosion prior to the fire on June 23, 1981. Despite this knowledge and the knowledge that the feedline should be replaced, Crown Central Petroleum Corporation decided to continue to operate the unit with the feedline in such condition;

"4. Crown Central Petroleum Corporation started up the unit prior to the occurrence in

lants objected to this submission, claiming it both contravened the substantive law of Texas and constituted an improper comment on the evidence.

### A. Correctness Under the Substantive Law of Texas

We initially note that "[a]lthough state law governs the *substance* of the jury instructions, the *manner* of giving instructions is controlled by federal law." *Martin v. Texaco,* 726 F.2d 207, 216 (5th Cir.1984) (emphasis added). *See McCullough v. Beech Aircraft Corp.,* 587 F.2d 754, 759 (5th Cir.1979); *Reyes v. Wyeth Laboratories,* 498 F.2d 1264, 1289 (5th Cir.), *cert. denied,* 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974). *See also Rehler v. Beech Aircraft Corp.,* 777 F.2d 1072, 1082 & n. 17 (5th Cir.1985). Appellants make two substantive arguments under Texas law.

### 1. Employer Negligence Submissions

■ Appellants contend that Texas law does not permit the consideration of employer negligence when the employee plaintiff, covered under the Texas worker's compensation law, seeks recovery from the third party. As appellants note, in *Varela v. American Petrofina Company of Texas, Inc.,* 658 S.W.2d 561, 562–65 (Tex.1983), the Texas Supreme Court held that in comparative negligence cases the employer's negligence could not be considered to reduce the employee plaintiff's recoverable damages in his suit against a third-party joint tort-feasor. The *Varela* court reasoned that under Tex.Rev.Civ.Stat.Ann. art. 8306 (Vernon 1967 and now Vernon Supp.1985), the Texas Worker's Compensation Act, a defendant third party cannot seek contribution from the plaintiff's em-

ployer because the employer's liability is limited by statute. *Varela* also held that a plaintiff employee cannot be considered to have "settled" with his employer, by receiving worker's compensation benefits, for purpose of Tex.Rev.Civ.Stat.Ann. art. 2212a § 2(e) (now section 33.015, Texas Civil Practice and Remedies Code). This reasoning has since been extended beyond comparative negligence cases to products cases based on strict liability in tort. *See Foley v. Cox,* 679 S.W.2d 58 (Tex.App.—Houston [14th Dist.] 1984, no writ). Appellants now seek to extend *Varela* by claiming that *Varela* prohibits any consideration of employer negligence for sole cause purposes.

However, neither *Varela* nor any of its progeny imply, much less hold, that a negligent third party may be liable to an employee plaintiff where the employer's acts or omissions are the *sole* cause of the complained of accident and injuries. Here no claim was made by Phillips for contribution or indemnity against Crown Central, and no interrogatory inquired about any negligence, fault, or tort on the part of Crown Central. The comparative fault interrogatory inquired only of the conduct of Phillips and the four appellants; no inquiry was made concerning Crown Central or any third party or third parties. Hence nothing in the charge violated *Varela* or any principle of Texas substantive law for which it stands.

### 2. Sole Cause as a Substantive Defense

■ Appellants next contend that recent Texas Supreme Court decisions eliminate *any* consideration by the jury of sole cause in a suit implicating products liability law,

question although Crown Central Petroleum Corporation management was advised some four hours prior to the fire that the unit was in a dangerous condition and should not be started up.

"You are instructed that if you should find that the acts or omissions of Crown Central Petroleum Corporation were the sole cause of the fire and resultant injuries to plaintiffs, then your verdict should be for the defendant.

Sole cause applies to all three theories of law as asserted by plaintiffs."

As appellants observed, this instruction is more than the standard, general definitional sole cause instruction requested by appellee, for it refers to Phillips' assertions of particular matters as being claimed to constitute sole cause. This instruction was not submitted as a part of the verdict form, but rather as a part of the court's general charge.

and thus any submission of sole cause *in any form* is substantive error because sole cause is no longer substantively available in these cases. In *First International Bank in San Antonio v. Roper Corp.,* 686 S.W.2d 602, 604–05 (Tex.1985), appellants' primary authority for this proposition, the Texas Supreme Court held that the submission of a sole cause instruction in a case tried only on products strict liability in tort was reversible error. In *Roper,* the court stated that a sole cause instruction, such as the one here, places "an undue emphasis on the ... [third party's] negligence when the jury was considering the existence of a [product] defect and its relationship to the injurious event," *id.* at 604, and improperly "single[s] out" and "highlight[s]" third-party conduct. *Id.* at 605.

When a sole cause instruction is submitted in a suit involving both negligence *and* products liability, however, it is uncertain whether Texas courts would consider the submission erroneous. *See* J. Sales, *Product Liability Law in Texas,* ¶ 3.04 at 262, esp. n. 247 (1985). In *Gross v. Black & Decker, Inc.,* 695 F.2d 858 (5th Cir.1983), a case decided prior to *Roper,* we held that a sole cause instruction was not reversible error. The Texas Supreme Court in *Roper* explicitly distinguished our decision in *Gross* on the grounds that "the plaintiff in *Gross* asserted a negligence cause of action as well as actions in products liability. The present case is grounded solely in products liability." 686 S.W.2d at 605. Despite its opportunity to expressly disavow our decision in *Gross,* the Texas Supreme Court did not do so. In this case, both negligence and strict product liability were asserted and submitted to the jury. Thus we find it unnecessary to reevaluate our holding in *Gross.*

Moreover, and wholly apart from whether this suit is grounded in negligence or strict products liability, we determine that sole cause is still a valid substantive concept in Texas. Although concededly it is error in Texas courts to give a sole cause instruction in a suit grounded in strict products liability, *see Roper,* 686 S.W.2d at 605, the instruction is not error because sole cause is not available on substantive grounds, but rather because the Texas courts view such "excess" instructions as harmful surplusage. In *Acord v. General Motors Corp.,* 669 S.W.2d 111, 116 (Tex. 1984) (holding that an instruction to the effect that a manufacturer is not an insurer nor guarantees a perfect product is error), a predecessor to *Roper,* the Texas Supreme Court held that "[t]he jury need not and should not be burdened with *surplus instructions.*" (Emphasis added.) That court continued, stating, "We explicitly approve the Pattern Jury Charge issue and instruction for design defect cases, and disapprove the addition of any other instructions in such cases, *however correctly they may state the law....*" *Id.* (emphasis added). In *Roper,* the Texas Supreme Court extended its holding in *Acord* on these surplus yet substantively correct instructions to specifically include sole cause, holding it to be "surplusage of the type against which we warned in *Acord.*" 686 S.W.2d at 604. Consequently, we find that sole cause instructions are excluded in Texas courts on nonsubstantive grounds, namely, their perceived tendency to confuse a jury or overemphasize one aspect of the case, or comment on the evidence. *Id.* at 604–05. Additionally, we note that in *Roper* the substantive validity of sole cause was not questioned. *Id.* at 603 ("Neither party to this suit questions the correctness of the instruction as a definition of 'sole cause.' "). No claim is made that sole cause is now substantively obsolete, like charitable immunity, or contributory negligence as a complete bar to recovery.

In Texas, both negligence and products strict liability suits require causation, although cause in a products strict liability action does not have to be foreseeable to be considered a "producing cause." *See General Motors Corp. v. Hopkins,* 548 S.W.2d 344, 351 (Tex.1977), *overruled in other respects, Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 428 (Tex.1984); *see* Sales, *supra,* ¶ 3.04 at p. 260, esp. n. 227. It must necessarily follow that if another person or

event solely caused an injury to a plaintiff, then regardless of whether there is negligence on the part of the defendant or its product is defective, a plaintiff cannot meet his *prima facie* case—for the defendant's actions did not *in fact* cause the plaintiff's injury.[2] Consequently, we find that sole cause is viable under Texas substantive law.

### B. Federal Court Instructions on State Law

■ In diversity actions, federal court jury instructions must accurately describe the applicable state substantive law. *See, e.g., Bass v. International Brotherhood of Boilermakers*, 630 F.2d 1058, 1061 (5th Cir.1980); *Kramer v. Keys*, 643 F.2d 382, 384 (5th Cir.1981); *Chemetron Corp. v. Business Funds, Inc.*, 682 F.2d 1149, 1178 (5th Cir.1982), *vacated and remanded for further consideration on other grounds*, 460 U.S. 1007, 103 S.Ct. 1245, 75 L.Ed.2d 476, *cert. denied sub nom. Bintliff v. Chemetron Corp.*, 460 U.S. 1013, 103 S.Ct. 1254, 75 L.Ed.2d 483 (1983), *initial opinion adhered to on remand*, 718 F.2d 725 (5th Cir.1983), *rehearing en banc ordered*, *id.* at 730. Once this obligation is met, a federal judge has discretion in how he decides to present the case to the jury, *see, e.g., Bass*, 630 F.2d at 1061; *Smith v. Borg-Warner Corp.*, 626 F.2d 384 (5th Cir. 1980); *Coughlin v. Capital Cement Co.*, 571 F.2d 290, 300 (5th Cir.1978), for the form or manner of instructions is controlled by federal, not state, law, *see Martin*, 726 F.2d at 216. Having found the sole cause instruction by the district judge substantively correct, we decline to find error in his not precisely following the Texas practice governing the form or manner of submitting this kind of case to the jury.[3]

■ Appellants assert that the district court erred by, in effect, submitting an inferential rebuttal as the controlling issue

---

**2.** We do not regard the special situation presented in *Huerta v. Hotel Dieu Hospital*, 636 S.W.2d 208 (Tex.App.—El Paso), *aff'd*, 639 S.W.2d 462 (Tex.1982), as applicable here. In *Huerta*, the plaintiff, a patient in the defendant hospital, was sexually fondled by a hospital maintenance employee who came in her room and acted on the pretense of being a doctor. The jury found that the maintenance man was acting with apparent authority and this was a proximate cause of the occurrence. It also found that the hospital's failure to screen the maintenance man before hiring him was negligence, but not a proximate cause, and found zero damages. The trial court instructed the jury that the plaintiff must prove "that the conduct of" the maintenance man "was not the sole proximate cause of her [plaintiff's] injuries" and that if the jury did not so find, "then you cannot find that any act or omission on the part of" the hospital "was a proximate cause of the injuries." The court of appeals, whose holding in this respect was affirmed by the Texas Supreme Court, held this instruction was substantively wrong, but *not* because sole cause was not generally a proper subject for inferential rebuttal, but rather because sole cause was only proper as to the conduct of a third party or an independent event with which the defendant was not connected. 636 S.W.2d at 210. Sole cause was held to be substantively inapplicable where it related to the very conduct of a defendant's own employee which was made the basis of the suit. *Id.* The maintenance man's "conduct was not an inferential rebuttal issue disproving exist-ence of an essential element." *Id.* The issue was not whether the maintenance man's conduct caused plaintiff's injuries, as it obviously did, nor whether something apart from that conduct caused the injuries, as it obviously did not, but rather the issue was whether the hospital was responsible for the conduct of the maintenance man. Nothing comparable is present here.

**3.** In Texas, the Texas Pattern Jury Charges are approved as a correct statement of the state's substantive law. *Acord*, 669 S.W.2d at 116. Recent Texas cases appear to demand, as a matter of procedure, no more and no less than the exact words of the pattern jury charges in products cases, *see id.; Roper*, 686 S.W.2d at 605. However, as we have stated:

"[I]t is scarcely error *per se* [for a federal judge] to decline to follow pattern or form book instructions. Nor does *Erie* compel the use of pattern state instructions, since the manner of giving jury instructions is controlled by federal law, ... and a pattern charge is but one procedure for instructing the jury—other procedures may be used so long as they correctly describe the applicable state law.... Pattern instructions are merely some evidence that an instruction is advisable." *Chemetron*, 682 F.2d at 1178 (citations omitted).

The obligation of the district judge was only to correctly charge the jury on the Texas substantive law, and further state court restrictions or limitations on the charge do not apply.

in the case. An inferential rebuttal is defined as an issue that seeks to disprove or negate an element of the plaintiff's *prima facie* case. *See, e.g., Scott v. Atchison, Topeka, and Santa Fe Railroad Co.,* 572 S.W.2d 273, 279 (Tex.1978); *American Jet, Inc. v. Leyendecker,* 683 S.W.2d 121, 126 (Tex.App.—San Antonio 1984, no writ); *Transport Ins. Co. v. Liggins,* 625 S.W.2d 780, 784 (Tex.App.—Ft. Worth 1981, writ ref'd n.r.e.). When a defendant asserts sole cause as a defense, he attacks causation, an element of the negligence and strict products liability causes of action. Thus sole cause is labeled an inferential rebuttal. *See* Sales, *supra* ¶ 3.04, at 258 n. 212 and accompanying text.

In Texas, inferential rebuttal contentions are not to be presented to the jury in the form of separate special issues, but at the most as explanatory instructions. *See, e.g., Lemos v. Montez,* 680 S.W.2d 798, 800 (Tex.1984); *Scott,* 572 S.W.2d at 279. In *Gonzales v. Missouri Pacific Railroad Co.,* 511 F.2d 629, 632 (5th Cir.1975), we as a matter of federal procedure have also discouraged the submission of inferential rebuttals as a separate interrogatory, for we held that sole cause should not be submitted as an interrogatory if the jury's answer to it might conflict with its answer to another interrogatory. *Id.*[4] We note that here sole cause was presented as an instruction, not a special interrogatory. Since there was no possibility of conflicting answers to the interrogatories, our concern in *Gonzales* is not implicated. Even if a sole cause interrogatory had been utilized, we have held that "special interrogatories a Federal District Judge ... submits need not be identical to those a Texas Judge must submit ... [because] [s]pecial ... matters of federal procedure are not governed by state rules." *Gonzales,* 511 F.2d at 632. Whether an instruction or a special interrogatory is employed is a matter of

charging procedure governed by federal law, and we afford our district courts latitude in presenting state law as long as that presentation is substantively correct. *Martin,* 627 F.2d at 216.

Appellants place special reliance on *Lewis v. Rego,* 757 F.2d 66, 71 (3d Cir.1985), where reversal was required because the district court incorrectly charged the jury on misuse. However, the error in the charge there consisted of a misstatement of *substantive* law, as the jury was in effect told that *any* causative misuse would negate liability, while under the applicable substantive law of Pennsylvania misuse would have that effect only if it were not reasonably foreseeable by the defendant. The case was apparently submitted on a general verdict, without special interrogatories, and it therefore could not be ascertained whether the verdict for the defendant was based on a finding of reasonably foreseeable misuse, contrary to the substantive law of Pennsylvania.

 We believe that the true nature of appellants' complaint is that the challenged charge amounted to an improper comment on the weight of the evidence, or an overemphasizing of one party's contentions. This seems to be the real basis of the decisions in cases such as *Roper.* As previously noted, *Roper* condemned a sole cause instruction stating that it "placed undue emphasis" on that contention and "singled out" and "highlighted" it, but observes that no party "questions the correctness of the instruction" there at issue. *Roper* relied primarily on *Acord,* and *Acord* condemned additional instructions, beyond those provided in the Pattern Jury Charges, "however correctly they may state the law." 669 S.W.2d at 116. *Acord* stated that such an "additional instruction amounted to a comment on the weight of

---

4. Appellants also claim that *Gonzales* is a condemnation of all sole cause submissions. However, *Gonzales* was concerned with a district court's denying appellants' *requested interrogatory* on sole cause. 511 F.2d at 632. We held the refusal to submit such an interrogatory proper because causation was adequately

presented in other jury questions and further questions on an inferential rebuttal issue could result in conflicting answers to the interrogatories. *Id.* Thus *Gonzales* does not stand for the proposition that *instructions* on sole cause are invalid.

the evidence," and that it was wrong "to single out" a particular defensive theory. *Id.* *Roper* characterizes *Acord* as condemning "additional instructions which single out" as being "improper comments," and states that the *Roper* instruction "was surplusage of the type against which we warned in *Acord.*" 686 S.W.2d at 604. We cannot read *Roper* as being other than a condemnation of charge *because* it is a comment on the evidence. *See also, e.g., McElroy v. Stocker*, 505 S.W.2d 615, 618–19 (Tex.Civ.App.—Houston [1st Dist.] 1974, no writ) (condemning unavoidable accident instruction as "a comment on the weight of the evidence" and because it "gives undue emphasis to the question of unavoidable accident").[5]

However, the rule in federal courts, whether in diversity cases or otherwise, is that the judge has "the power, denied many state judges, to comment on the evidence" and "the power, if he chooses, to summarize the evidence and comment in a proper way on the facts and the evidence if he is careful to make it plain to the jury that they are the sole finder of the facts." Wright & Miller, *Federal Practice and Procedure: Civil* § 2557 at 664–65 (footnote omitted). "Federal trial courts have a proper discretion in summarizing and commenting upon the evidence." *Reyes*, 498 F.2d at 1292. "In the manner and method of instructing the jury, federal courts follow their own rules, regardless of state practice and legislation.... If a state-created right is to be enforced, of course the state law must be looked to for the substance of the instructions, but the form of instructions ... are procedural questions on which the federal court is not bound by state concepts." Wright & Miller, § 2555 at 651 (footnotes omitted). *Reyes*, 498 F.2d at 1289. "[A]bstract charges are not in much favor with the courts.... The courts have shown a distinct preference, particularly in complex cases, for instructions that relate the law to the evidence." Wright & Miller, § 2556 at 659–60. The actual form of the trial court's instructions

on a party's theory "is within the trial court's discretion." *Reyes*, 498 F.2d at 1289. "A district judge has wide discretion to select his own words and to charge in his own style, ... which includes the use of illustrations to clarify an instruction." *Sandidge v. Salen Offshore Drilling Co.*, 764 F.2d 252, 262 (5th Cir.1985). *See also Martin*, 726 F.2d at 215. Explanatory comments are prejudicial only if the trial court does not make it clear that the jury is the sole judge of the facts. *Reyes*, 498 F.2d at 1292.

Under these standards, we perceive no error or abuse of discretion in this aspect of the charge. There was no prejudicially unfair emphasis on sole cause—the complained of language is less than two pages in a charge of over thirty pages. The charge as a whole was not unbalanced or one-sided. That the charge spoke of the specifics which Phillips contended amounted to sole cause is not ground for complaint, as there is no requirement that the charge be abstract. It was made clear to the jury that there could be more than one legal cause of an event. The jury was clearly told that they were the exclusive judge of the facts. There was nothing coercive about the charge, and nothing to indicate to the jury that the judge believed that any acts or omissions of Crown Central were in fact the sole cause of the fire.

■ Appellants point to the language in the instruction that if the jury found Crown Central's acts or omissions were the sole cause of the fire, "your verdict should be for the defendant." While this told the jury the legal effect of a sole cause determination on their part, that does not render the instruction erroneous. Federal judges are free to tell the juries the effects of their answers. *See, e.g., Martin*, 726 F.2d at 216 ("Unlike the Texas courts, federal courts are free to tell juries the effect of their answers."); *Perricone v. Kansas City Southern Railway Co.*, 704 F.2d 1376, 1378 (5th Cir.1983) (it is proper to

---

5. However, not all mention of sole cause in the charge leads to reversal in Texas courts. *See,* *e.g., Woods v. Cane Carrier Co., Inc.*, 693 S.W.2d 377 (Tex.1985).

inform the jury of the effect of their answers to interrogatories); *Porche v. Gulf Mississippi Marine Corp.*, 390 F.Supp. 624, 632 (E.D.La.1975) (jury may be told the effect its decision will have). Thus, we hold that here, as in *Martin*, "instructions are a matter of discretion for the trial court and the decision to give [this] instruction[] was not an abuse of discretion." 726 F.2d at 216.

Finally, we think any possible error was harmless. While the reference to a verdict for defendant, if Crown Central's acts or omissions were determined to be the sole cause, was inexact, since there was no verdict form allowing a verdict for either party as such, it was clear from the charge that the sole cause claim related to the question of cause. That was the subject matter of the instruction in question. In reviewing the charge, "we ignore technical imperfections." *Pierce v. Ramsey Winch Co.*, 753 F.2d 416, 425 (5th Cir. 1985). "An ambiguous phrase or inaccurate clause does not necessarily destroy an entire instruction." *Reyes*, 498 F.2d at 1289. Nor do we see any prejudice, for the instruction, as we have seen, was substantively correct. Even if it had not been, the jury never reached the cause interrogatories. *See Rehler*, 777 F.2d at 1088. We think it unrealistic to conclude that there is any likelihood or substantial possibility that the jury's answers to the negligence, product dangerousness, and breach of warranty interrogatories were influenced by the instruction on sole cause, when the charge as a whole, and verdict form, which the charge went over and explained interrogatory by interrogatory, clearly showed that such interrogatories did not inquire about cause and that cause was inquired about in separate interrogatories.

Accordingly, we reject appellants' argument based on the sole cause instruction.

## II. Inherently Dangerous Activities

Appellants next contend that the district court erred in not instructing the jury on Phillips' strict liability for "inherently dangerous activities," a theory of recovery under Texas law. Texas courts have endorsed the position of the *Restatement (Second) of Torts* § 414 (1965), and imposed liability on principals who attempt to farm out inherently dangerous activities to independent contractors. *See Sun Pipeline Co., Inc. v. Kirkpatrick*, 514 S.W.2d 789, 794 (Tex.Civ.App.—Beaumont 1974, writ ref'd n.r.e.) ("We readily accept the proposition that the employer of an independent contractor may not escape liability for the acts of the contractor which are 'intrinsically dangerous'...."). The district court below failed to submit this issue to the jury, in effect granting Phillips a directed verdict on that theory of recovery. Therefore, we must determine the historical facts most favorable to appellants which the jury could have found from the evidence. *See Boeing v. Shipman*, 411 F.2d 363, 373 (5th Cir.1969). We must then determine whether such facts constitute substantial evidence supporting recovery on this theory. We determine appellants have failed to make out a case for strict liability on this basis.

In Texas, vicarious liability is imposed on an employer for the acts of an independent contractor conducting inherently dangerous activities on behalf of the employer. Here, however, there is no employer-independent contractor relationship. An independent contractor is one who performs an activity for another, yet attains functional autonomy over his actions. *Pitchfork Land and Cattle Co. v. King*, 346 S.W.2d 598, 603 (Tex.1961) (listing the recognized test for independent contractors including, *inter alia*, the independent nature of the contractor's business, his obligation to supply tools and materials, and his right to control the progress of the work); *see Living, Inc. v. Redinger*, 667 S.W.2d 846, 855 (Tex.Ct.App.—Houston [1st Dist.] 1984), *reversed on other grounds*, 689 S.W.2d 415 (Tex.1985); *Summerville & Sons, Inc. v. Carter*, 571 S.W.2d 953, 956 (Tex.Ct.App.— Tyler 1978), *aff'd*, 584 S.W.2d 274 (Tex. 1979). The Texas courts have defined an independent contractor as "any person who, in the pursuit of an independent busi-

ness, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details." *Home Interiors & Gifts, Inc. v. Velize,* 695 S.W.2d 35, 40–41 (Tex.Ct.App.—Corpus Christi 1985, writ ref'd n.r.e.) (quoting *Pitchfork Land,* 346 S.W.2d at 598).

Crown Central cannot be labeled an independent contractor because, quite simply, Crown Central did not work for Phillips. It is apparent that Crown Central acted only for itself, and that Crown Central, and only Crown Central, called the shots. The contract between Phillips and Crown Central was for the sale and lease of certain knowledge and technology, including patents. This agreement did not make Phillips the employer of Crown Central, nor did it make Crown Central an independent contractor.

Because there is no independent contractor-employer relationship, we hold that the district court's action in not presenting this theory to the jury was correct. Thus, we need not decide whether the activities involved here are intrinsically dangerous or whether appellants, as employees of an independent contractor, can recover.[6]

### III. Implied Duties

■ Appellants' last contention is that the district court committed error in not submitting two theories on the basis of which appellants claim that Phillips owed them implied duties. First, appellants claim that since Phillips was contractually bound to perform certain tasks, Phillips had a duty to perform these tasks with reasonable care. *See* Prosser and Keeton, *The Law on Torts,* § 93 at 670 (5th ed. 1984). Second, appellants claim that regardless of whether Phillips was contractually bound to perform a task, once Phillips undertook to perform it had a duty in tort to do so with reasonable care. *See Colonial Savings Association v. Taylor,* 544 S.W.2d 116, 119–20 (Tex.1976) (adopting *Restatement (Second) of Torts* § 323 (1965) for liability of a negligent undertaking to the person owed performance); *Johnson v. Abbe Engineering Co.,* 749 F.2d 1131, 1132 n. 1 (5th Cir.1984) (holding that Texas courts would apply *Restatement* section 324 and extend liability for *negligent undertakings* to third parties); *see also* Sales, ¶ 4.02 at p. 328 (stating that liability under *Restatement (Second) of Torts* § 324 (1965) is "predicated solely in negligence").

It is precisely because these theories are grounded in fault that we find that the district court's failure to separately submit these two issues was not an abuse of discretion, for such a submission was otherwise adequately covered by the charge. The district court submitted negligence to the jury as one of three theories of recovery, and the negligence instruction subsumed the two "implied duty" theories.[7]

---

**6.** We also note that even if Crown Central was an independent contractor and this work was "inherently dangerous," liability would not be imposed on Phillips if Crown Central had sole control of the process. *See Shell Oil Co. v. Waxler,* 652 S.W.2d 454, 457 (Tex.App.—Houston [1st Dist.] 1983, ref'd n.r.e.). This appears to be the case here because Crown Central owned and operated this unit. Moreover, Crown Central did not need Phillips' consent to operate this unit, and, significantly, Phillips has not at any time owned a part of this unit.

**7.** On the contractual implied duty claim, appellants' counsel alleged that there was a "legal duty accompanying each contract to perform with *due care, skill, and reasonable expedience and faithfulness* the thing or things agreed upon to be done." These "things" included the exchange of technical information, the rights of

Phillips to inspect the plant, and Phillips' duty to provide advisory services to Crown Central. Appellants argue that once Phillips undertook to complete an inspection, it promised to do so with *reasonable* care.

The jury below was charged on Phillips' negligence, and this instruction included a potential lack of reasonable care on Phillips' part due, *inter alia,* to its failure to inspect or properly inspect the plant, to notify Crown Central of excessive corrosion, and to warn Crown Central of the danger of possible revision in the process. Moreover, ordinary care was defined in the charge as "that care which *reasonably prudent* persons exercise in the management of their own affairs...." (Emphasis added.) We find it apparent that appellants' two implied duty theories were redundant because the instructions and special issues actually submitted completely encompassed the duties and issues that appel-

As we have stated, "[A] trial court is not required to give every charge requested ... if the subject matter of such requested instructions was sufficiently covered by other instructions from the court." *Rehler*, 777 F.2d at 1078. *See also, e.g., Trinity Carton Co. v. Falstaff Brewing Co.*, 767 F.2d 184, 191 (5th Cir.1985). The charge adequately presented appellants' theories in these respects and the district court's failure to separately submit the mentioned theories of recovery was not an abuse of discretion.

### Conclusion

Having concluded that none of appellants' contentions present reversible error, the judgment of the district court is affirmed.

AFFIRMED.

lants were asserting. Moreover, the district judge listed ten separate events which could constitute negligence by Phillips, and these events thoroughly overlap with appellants' desired submissions.