**INSURANCE COMPANY OF AMERICA, Appellant,**

v.

**Billie K. ROYER, Independent Executrix, Appellee.**

**No. 12487.**

Court of Civil Appeals of Texas, Austin.

Feb. 9, 1977.

Rehearing Denied March 9, 1977.

of Travis County. Royer sued for premium renewals purportedly due him from an agent's contract between him and appellant. After trial to the court, judgment was entered for appellee, Billie K. Royer,[1] for $19,314.82 and attorney's fees of $5,000.00.

In January, 1969, appellant and Royer entered into a form agent's contract denominated a "Sales Manager's Contract." By the terms of the contract Royer was appointed sales manager for the purpose of procuring applications for life insurance.

In her trial petition appellee pleaded that pursuant to the contract Royer obtained applications for insurance and continued to do so through September, 1972. Likewise, appellant accepted the applications for insurance and paid commissions to Royer on the policies in force through September, 1972. Appellee declared that on October 1, 1972, appellant terminated the contract and refused to continue payment of renewal commissions to Royer. Appellee alleged that she was entitled to recover $20,000 in renewal premiums from appellant.

In its trial pleading, appellant averred that the agent's contract had terminated by its terms on January 6, 1971, and that, as a result, appellant owed Royer nothing.

After entry of judgment, appellant did not request the court to file findings of fact and conclusions of law, and the court did not do so. This being so, it is assumed on appeal that the court found every fact necessary to sustain the judgment if such factual propositions were raised by the pleadings and supported by the evidence, *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W.2d 609 (1950), and the judgment will be affirmed on any legal theory that finds support in the evidence. *Bishop v. Bishop*, 359 S.W.2d 869 (Tex.1962).

In its points of error appellant raises several provisions of the contract which allegedly bar Royer's recovery of the renewal

Frank G. Newman, John L. Shook, Newman, Shook & Newman, Dallas, for appellant.

Fred E. Davis, Davis & Davis, Austin, for appellee.

SHANNON, Justice.

Dale E. Royer sued appellant, Insurance Company of America, in the district court

1. During the pendency of the suit in district court, Royer died, and pursuant to Tex.R.Civ.P. 151, Billie K. Royer, independent executrix of the estate of Dale E. Royer, deceased, appeared and prosecuted the suit.

commissions. Appellant contended Royer's right to renewal commissions terminated on January 6, 1971, because of his failure to maintain the "persistency level" required by the contract. In this connection, the term "persistency level" refers to the provision in the contract which provides for its termination and the termination of payment of renewal commissions if less than eighty-eight percent of all policies written by the agent during any year remain in force at the end of the year. Appellant claims further that Royer violated the clause of the contract requiring the agent " . . . to faithfully devote his full time to the service of the company hereunder, and agrees not to engage in any additional line of endeavor . . . " since Royer undertook to sell real estate for the Horizon Corporation while he was still under contract with appellant. Appellant maintains further that it did not waive the termination provisions since another paragraph of the contract provided that appellant " . . . shall not be deemed to have waived any right under this Agreement unless it shall do so in writing by a contract signed by the President or Secretary of the Company."

For purposes of this opinion we will assume that Royer failed to maintain the required "persistency level" and that he sold real estate for Horizon Corporation during the existence of the contract with appellant. Nevertheless, the court's implied finding that appellant waived Royer's compliance in those respects is correct.

■ Appellant argues that there can be no waiver of the provisions of the contract requiring the certain "persistency level" and prohibiting other employments. This is so, says appellant, because of the contractual provision prohibiting waiver of any provision of the contract unless the waiver was in writing and signed by its officials. Despite the contractual requirement of written waiver, appellant could waive those provisions or by the conduct of its officers estop itself from insisting upon their enforcement to the same extent that it would have had that power had there been no provision requiring written waiver. 3A

*Corbin on Contracts* § 763 (Rev. ed. 1960), *Fisher v. Tiffin*, 275 Or. 437, 551 P.2d 1061 (1976), *Davis v. Payne and Day, Inc.*, 10 Utah 2d 53, 348 P.2d 337 (1960).

■ There was much evidence which the district court could consider, and believe, which supported its implied finding of waiver. For example, appellant continued to pay Royer renewal commissions for about eighteen months after the time appellant claims the contract terminated. During the same period of time appellant awarded Royer a silver service in recognition of his work performance. Royer's deposition testimony was admitted concerning Royer's conference with appellant's president in March, 1971. The subject of renewal commissions was discussed at that conference and, according to Royer, appellant's president assured him that there was nothing to worry about.

The admission of testimony of W. K. Huffman forms the basis for appellant's points of error nine and ten. Appellee called Huffman for the purpose of testifying as to the amount of renewal commissions due under the agent's contract. Huffman is a vice-president of a life insurance company and is experienced in the development of computer systems for use in the life insurance business. Huffman had assisted appellant in the establishment of its computer record-keeping system, and had designed the internal coding for that system. In general, he had been furnished information concerning commissions on business that Royer had produced and had projected calculations with respect to the renewal commissions due Royer from appellant. Counsel for appellee then asked Huffman to testify as to the amount which he had calculated was due Royer. At that time appellant's counsel made the following objection:

"If the Court please, we object to all this testimony as being based upon speculation or hearsay. He is not limiting it to facts he has of his personal knowledge. He is drawing legal conclusions. The mere fact that the—that he doesn't testify to anything from the books and

records, merely something that he has that he bases some assumptions on, that he is—he hasn't shown himself to be such an expert as to sit here and take assumptions and go 10 years in the future and come up with figures, and we haven't seen the instruments which he has worked from, shouldn't be allowed to state his conclusions from documents that are not in evidence but what he understood by what somebody told him or by what he assumes either as to commission rate or as to assumptions as to lapses or assumptions as to continuances.

"In other words, what he is fixing to give now is a 10–year or 6–year, you might say, projection into the future of what these people claim that they want to recover, and those years haven't occurred yet. That is, there has not been any premiums collected, there has not been anything on which you can base any assumption. In other words, as long as his figures are with reference to things that have happened and that occurred and that are in black and white, all right but he is not competent to testify to things in the future, no matter what his assumption is. In other words, one man might take one assumption, and another, another one, and another, another one and he is fixing to testify now as to what this shows projected into the future, not what happened—not showing what happened in the past, and I say that no expert witness is entitled to do that in this kind of a lawsuit. In other words, you've got to wait your time. If you are entitled to some more later on, you've got to sue for it. In other words, you can't sit here, as an expert witness, project on assumptions, 10 years of business and do it on guesswork, speculation and supposition, and we object to all of his figures for that reason."

■ An objection to the offer of evidence must state clearly and specifically the grounds upon which the objection is based at the time the offer is made. The purpose of the requirement is so that the basis of the objection may be understood by the court in order that it may make an intelligent ruling and so that opposing counsel may have an opportunity to remove the objectionable grounds. *Bohanan v. Hans*, 26 Tex. 445 (1863), *Campbell v. Paschall*, 132 Tex.Com.App. 226, 121 S.W.2d 593 (1938). "Covert, obscure objections to evidence should receive no countenance." *Cobb v. Norwood*, 11 Tex. 556 (1854).

■ After a study of counsel's objection, its meaning remains to us "covert and obscure." We are quite certain that it must have so appeared to the district court in the press of trial. We have concluded that the objection was too general and that, as a result, appellant waived whatever complaints it may have had concerning Huffman's testimony.

Appellant's final point complains that the court erred in permitting Royer's widow, the executrix of Royer's estate, to testify concerning transactions with the deceased in violation of the Dead Man's Statute, Tex. Rev.Civ.Stat.Ann. art. 3716 (1926). Appellant objected to the following question and answer of Mrs. Royer: "Did you have any indication that he [Royer] had considered himself fired?" Mrs. Royer answered: "Absolutely not."

■ A "transaction" under the Dead Man's Statute includes observations of unilateral acts of the deceased. *Holland v. Nimitz*, 111 Tex. 419, 232 S.W. 298 (1921). In *Nimitz* the court held that the prohibition includes the testimony with respect to ". . . every method by which one person can derive impressions or information from the conduct, condition, or language of another." The rule is still followed. *Hart v. Rogers*, 527 S.W.2d 230 (Tex.Civ.App. 1975, writ ref'd n. r. e.).

■ The district court erred in allowing the question and answer in evidence, since Mrs. Royer's testimony concerned a "transaction" with Royer. Nevertheless, appellant has not demonstrated that the court's error in admitting the testimony was such a denial of appellant's rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Tex.R.Civ.P. 434.

The judgment is affirmed.

Affirmed.