**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

02-50168
_____

BROADCAST SATELLITE INTERNATIONAL, INC.,

Plaintiff-Appellant,

VERSUS

NATIONAL DIGITAL TELEVISION CENTER, INC., A DELAWARE CORPORATION
also known as National Digital; ET AL,

Defendants,

NATIONAL DIGITAL TELEVISION CENTER, INC., A COLORADO CORPORATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
For the Western District of Texas
_____

March 13, 2003

Before JOLLY, DUHÉ, and WIENER, Circuit Judges.

DUHÉ, Circuit Judge:

The sole issue in this appeal is whether the district court improperly charged the jury and gave it an unduly narrow special interrogatory, thereby making improper findings, at least impliedly, on material fact issues in dispute. We see no genuine issue of material fact that was not given to the jury and no abuse of discretion in the jury charges or interrogatory. We discern no error by the district court and affirm.

I.

Defendant National Digital Television Center (NDTC) agreed to pay Plaintiff Broadcast Satellite International (BSI) $35,000 per month as an assignment fee in consideration for the assignment of a lease of Transponder 13 on the Galaxy VII satellite. NDTC leased the transponder from a third party, PanAmSat, via a lease assignment brokered by BSI. To avoid confusion resulting from multiple contracts called by the parties "The Galaxy VII Agreement," we refer to the contract between BSI and NDTC as the "Fee Agreement" and the PanAmStat-NDTC lease that BSI brokered as the "Satellite Lease."

The term of the Fee Agreement was through 31 December 2006 or, if earlier, the termination of the Satellite Lease. NDTC stopped paying the assignment fee in April 2000, and BSI sued for breach of contract. In defense NDTC contended that the assignment fee was no longer due because the underlying Satellite Lease had terminated in December 1998, thereby terminating the Fee Agreement as well. As counter claimant, NDTC sought reimbursement of the monthly assignment fees paid by it after December 1998. In defense BSI contended that NDTC was estopped by its conduct from claiming termination or waived its right to a refund. After a jury trial, take-nothing judgments were entered on both the main demand and the counterclaim. Only BSI appeals, seeking a new trial with more favorable jury charges and interrogatories on its claim for breach of contract.

BSI's appeal concerns Sections 3 and 6 of the Fee Agreement. The term of the Fee Agreement was tied to termination of the

Satellite Lease in the following provision:

> 3. Term.  The term of this [Fee] Agreement (the "Term") shall commence on the date first set forth above and shall continue until the earlier to occur of (i) December 31, 2006, [or] (ii) termination of the Galaxy VII [Satellite Lease] Agreement . . . .  The foregoing notwithstanding, the Term shall not cease if WTCI[1] [Lessee] waives any rights it may have to terminate its rights under the Galaxy VII [Satellite Lease] Agreement and continues to lease a transponder under the Galaxy VII [Satellite Lease] Agreement.

Because the lessee's terminating the Satellite Lease, to which BSI was not a party, would terminate the Fee Agreement, the Fee Agreement also provided BSI the following protection:

> 6.  Covenant of [Lessee].  During the Term, [Lessee] agrees that it will not enter into a voluntary agreement with HCG [the Satellite owner] to terminate the Galaxy VII [Satellite Lease] Agreement or voluntarily default in [Lessee's] obligations under the Galaxy VII [Satellite Lease] Agreement for the sole purpose of avoiding its obligations under this [Fee] Agreement.

## II.

BSI argues that the district court erred in submitting an overly narrow breach-of-contract interrogatory to the jury.  The special interrogatory was:  "Did NDTC terminate the [Satellite Lease] for the sole reason of avoiding its obligation under the

---

[1] WTCI's name appears as the Lessee in the Fee Agreement.  The Satellite Lease was originally between Carribean International Network (CIN) as lessee and Hughes Communication Galaxy (HCG) as owner.  Through a series of transactions, Plaintiff BSI became CIN's agent to find a sub-lessee; BSI eventually brokered the assignment of CIN's lessee rights to WTCI, with WTCI assuming the rental obligation directly to HCG, without a sublease.  PanAmSat eventually succeeded HCG as lessor of the satellite, and the Lessee's rights eventually devolved from WTCI to NDTC.  Though WTCI was the original signatory party to the Fee Agreement, Defendant NDTC became the successor-in-interest to WTCI under the Fee Agreement, obligated to pay the monthly assignment fee to BSI and bound by the covenants  therein.

3

[Fee] Agreement?"  BSI also contends that, by asking the reason NDTC terminated the Satellite Lease, the interrogatory impliedly found that the Satellite Lease of Transponder 13 had been "terminated," when termination is fraught with factual disputes. BSI argues that the verdict form further assumed that NDTC had not waived its right to claim that there was such a termination — another issue that BSI considers to be for a jury.

BSI preserved its objection and requested predicate jury interrogatories, one asking whether termination occurred at all, one asking whether NDTC waived the right to claim that the Satellite Lease terminated, and one on intent of the parties. Finally BSI submitted a broader form interrogatory, asking generally about breach of the payment obligation under the Fee Agreement.

A.  Standard of Review

We review special interrogatories and jury charges for abuse of discretion.  EEOC v. Manville Sales Corp., 27 F.3d 1089, 1096 (5th Cir. 1994), cert denied, 513 U.S. 1190, 115 S.Ct. 1252, 131 L.Ed.2d 133 (1995); Barton's Disposal Serv., Inc. v. Tiger Corp., 886 F.2d 1430, 1434 (5th Cir. 1989).  Presenting the jury with a special verdict is within the discretion of the trial court. Fed. R. Civ. P. 49(a).  If the trial court wholly fails to submit an interrogatory on a question of fact, a court commits reversible error.  Solis v. Rio Grande Independent School, 734 F.2d 243, 248 (5th Cir. 1984).  Under Rule 49(a) a district judge must submit to the jury all material issues raised by the pleadings and the

4

evidence.  Id.; Simien v. S.S. Kresge Co., 566 F.2d 551, 555 (5th Cir. 1978).

B.  The Alleged Fact Issues on Termination

We agree with BSI that, by asking the jury about the "sole reason" that NDTC terminated the Satellite Lease, the jury interrogatory assumed that the Satellite Lease was terminated.  The district court's decisions of what to ask the jury and what not to ask[2] were consistent with the court's earlier ruling on cross motions for summary judgment.  There the court had declared, "Based on the summary judgment proof presented by the parties, the Court finds that the underlying [Satellite] Lease was terminated by PanAmStat and TCI/NDTC in late 1998."  It denied summary judgment to both parties, however, because the purpose of termination was genuinely at issue:  "the summary judgment evidence . . . presents a material question of fact regarding whether TCI/NDTC's 'sole reason' for terminating the underlying [Satellite] Lease was a financial decision designed to avoid paying BSI the Assignment Fee due under the Galaxy VII [Fee] Agreement."  Submitting the interrogatory on the "sole purpose" of the termination and refusing the predicate question on termination were consistent with this summary judgment ruling.

The questions for this Court then become 1) whether the trial court validly found termination of the Satellite Lease as a matter

---

[2]     Denying BSI's request for a jury question whether the Satellite Lease was properly terminated, the district court stated, "that's a legal issue, it seems to me, rather than a fact issue." 9 R. 424.

of law; and 2) if so, whether the court submitted an appropriate interrogatory to assess how that termination of the Satellite Lease affected the Fee Agreement.

(1) Termination of the Satellite Lease.

NDTC and PanAmStat terminated the Satellite Lease by an agreement on 31 December 1998 which declares: "As of January 1, 1999, the [Satellite Lease] Agreement is fully, effectively and finally terminated, along with all associated rights and obligations of Lessee and PanAmSat under the [Satellite Lease] Agreement . . . ." Ex. D-14 (the "Termination Contract"). BSI argues that the evidence nevertheless revealed fact issues whether the Satellite Lease had actually terminated.

BSI recites the circumstances around the termination of the Satellite Lease, focusing on a switch of leases on Transponders 13 and 15 with NDTC's discontinued use of Transponder 15 and continued use of Transponder 13 after the switch and termination.[3] BSI contends that the swap-termination with continued use of

_____

[3]    In addition to leasing Transponder 13, a preemptible or reserve transponder, NDTC had also leased Transponder 15, a primary transponder, from PanAmSat, as well as a number of other transponders on Galaxy VII. Transponder 13 did not qualify for interim backup protection, a fact that left it with no backup protection at all after the loss of a backup satellite. Transponder 15, however, had backup protection assuring uninterrupted service to the customers. NDTC lost a customer on Transponder 15; PanAmStat permitted NDTC to reassign the rights of the primary protected lease from Transponder 15 to Transponder 13 and the rights of the Satellite Lease (preemptible) to Transponder 15. Thus NDTC was able to use its primary lease to allow its customer on Transponder 13 to remain in place and to receive backup protection for its programming. NDTC then entered the agreement with PanAmSat ending the Satellite Lease then assigned to Transponder 15.

Transponder 13 left a fact issue whether the Satellite Lease was terminated so as to cause termination of the Fee Agreement.

To the extent BSI is arguing that unresolved fact issues bear on whether the Satellite Lease itself terminated, the contention is meritless. Under the undisputed facts, a termination occurred, as unambiguously set forth in the Termination Contract between the parties to the Satellite Lease. The fact of NDTC's continued use of Transponder 13 under a new arrangement with PanAmSat does not invalidate that termination. We will not disturb the district court's finding as a matter of law on summary judgment that the Satellite Lease terminated nor its refusal to submit the issue to the jury as a matter of fact.[4]

(2) Effect of Termination of the Satellite Lease
    on the Fee Agreement.

BSI's next argument is that fact issues bear on, not whether the Satellite Lease itself terminated, but whether that termination of the Satellite Lease terminated the Fee Agreement. BSI offered as evidence that the parties did not intend such events to terminate the Fee Agreement a) testimony that a PanAmSat representative had never heard of a satellite lease termination with continued use of the transponder; and b) an admission by one of NDTC's representatives that losing a customer on a transponder was not a valid reason to stop paying the assignment fee. BSI argues that the Fee Agreement fails to clearly and unambiguously

---

[4] Defense counsel's statement at the charge conference, that whether the lease terminated in 1998 was a disputed question for the jury, did not bind the court and could not supply the missing evidence to make the issue one of fact for the jury.

7

define what constitutes a "termination," and that the question of contractual intent was a necessary predicate question for the jury. The district court denied BSI's requested jury interrogatory asking whether the parties intended that the term of the Fee Agreement would end if NDTC were still using Transponder 13.

The question whether a contract is ambiguous is properly decided by the court and not a jury. Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983); R & P Enterprises v. LaGuarta, Gavel & Kirk, Inc., 596 S.W.2d 517, 518 (Tex. 1980). We review de novo a district court's determination that a contract is not ambiguous. Fuller v. Philips Petroleum Co., 872 F.2d 655, 657 (5th Cir. 1989). The Fee Agreement, in the "Term" paragraph (§ 3), provides unambiguously for termination when the Satellite Lease terminates. The Fee Agreement also provides an unambiguous covenant of NDTC (§ 6) not to voluntarily terminate the Satellite Lease "for the sole purpose of avoiding its obligations under [the Fee] Agreement." This contract alone expresses the intent of the parties; from these simple words we objectively determine the contractual intent. Fuller, 872 F.2d 655, 657.

We find no ambiguity in the meaning of "termination." The covenant in § 6 of the Fee Agreement leaves a single question for the factfinder: whether the "sole purpose" of NDTC's entering the termination agreement with PanAmSat was to avoid NDTC's obligations under the Fee Agreement.[5] We agree with the district court's

---

[5] As for the evidence BSI identified as presenting potential fact issues, we note that "sole purpose" interrogatory allowed consideration of those matters. The interrogatory submitted to the

8

determination that contractual intent of the parties was not an appropriate fact question for the jury. <u>Coker</u>, 650 S.W.2d at 394 (unambiguous contract is to be construed by a court as a matter of law).

In sum, the court's finding that the Satellite Lease terminated in 1998 was a proper legal interpretation of the Termination Contract. The court's decision not to allow the jury to construe the Fee Agreement was correct. The court appropriately identified the fact question presented by the "sole purpose" provision of the Fee Agreement.

C.   <u>Fact Issue of Waiver?</u>

BSI contends that, even if a termination of the Satellite Lease occurred, a material fact issue exists whether NDTC waived any right under the Fee Agreement to claim or rely on such termination. A waiver is an intentional release of a known right or intentional conduct inconsistent with claiming it. <u>Massachusetts Bonding & Ins. Co. v. Orkin Exterminating Co.</u>, 416 S.W.2d 396, 401 (Tex. 1967); <u>R. Conrad Moore & Assoc., Inc. v. Lerma</u>, 946 S.W.2d 90, 93 (Tex. App.—El Paso 1997, writ denied). The following elements must be met to find waiver: 1) a right must exist at the time of the waiver; 2) the party who is accused of waiver must have constructive or actual knowledge of the right in

---

jury certainly required the jury to consider whether the switch-termination-with-continued-use arrangement was a sham agreed to by NDTC solely to avoid the obligations of the Fee Agreement. BSI's complaints about the loss of a customer on Transponder 15 also bore on the reason for termination, not the fact of termination. Thus, the evidence identified by BSI did not require an additional interrogatory on intent to go to the jury.

question; and 3) the party intended to relinquish its right.  R. Conrad Moore, 946 S.W.2d at 93.

BSI argues that the following conduct is inconsistent with NDTC's claim of termination and presented a fact issue of waiver: 1) NDTC continued to make monthly fee payments to BSI (at least from January 1999 to March 2000); 2) NDTC approved each such payment separately; 3) no one at NDTC notified BSI that the Satellite Lease and therefore the Fee Agreement terminated (at least until April or May 2000); and 4) NDTC continues to use the very same transponder that was subject to the assigned lease after termination of the lease.  BSI had requested a specific predicate jury question, i.e., "Did NDTC waive any right it had to claim that the [Satellite] lease was terminated effective December 31, 1998?"  BSI argues that the special interrogatory about the sole purpose of the termination erroneously assumed as a matter of law that there was no waiver by NDTC of its right under the Fee Agreement to claim or rely on termination of the Satellite Lease.

We find no unresolved factual dispute about waiver that was taken from the jury.  The continued use of Transponder 13 is not material because it is not conduct inconsistent with Defendant's claim of termination.  Defendant's continued use of Transponder 13 was undisputably under a new arrangement with the satellite owner, executed near the time of their mutual agreement terminating the Satellite Lease.[6]  NDTC made alternative arrangements with PanAmSat

---

[6]  See Ex. D-13, letter agreement of December 11, 1998, reassigning to Transponder 15 the Satellite Lease between NDTC and PanAmStat.

10

for use of Transponder 13 that were entirely *consistent* with the Termination Contract they entered.

As for the other alleged inconsistent behaviors — the continued fee payments by BSI, NDTC's approval of each payment, and the failure to notify BSI of the Satellite Lease termination — none of these entail unresolved fact issues. Only their effect is at issue. The jury was indeed given the question of the effect of this behavior on the rights between BSI and NDTC.

The jury was appropriately instructed on the waiver issue as an affirmative defense to NDTC's counterclaim,[7] and not on BSI's main demand. The first of the three elements of waiver requires that "a right [] exist at the time of the waiver." R. Conrad Moore, 946 S.W.2d at 93. Here, the alleged "waiver" was NDTC's conduct in continuing payments under the Fee Agreement and in failing to notify BSI that the termination of the Satellite Lease occurred; the "right" that existed at the time of that conduct was

_____

[7] After noting that "both parties have asserted affirmative defenses," 6 R. 1357, the court summarized NDTC's countersuit for a refund of allegedly mistaken fee payments and stated, "BSI claims that NDTC waived its right to a refund or that NDTC's conduct should prevent them from obtaining a refund of money overpaid to BSI." 6 R. 1359. Addressing BSI's waiver defense to the counterclaim more specifically, the court instructed,

> Additionally, in the event that BSI does not prevail on its breach of contract claim against NDTC, NDTC shall not be entitled to reimbursement if a waiver occurred. "Waiver" is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right. "Waiver" can be evidenced by silence or inaction for such an unreasonable period of time as to indicate an intention to waive a known right or by conduct of such a nature as to mislead the other party into an honest belief that the waiver was intended or assented to.

6 R. 1362.

11

the contractual right to show that the Fee Agreement terminated earlier by termination of the Satellite Lease.

Considering the time frame of the alleged conduct constituting waiver, we conclude that the waiver argument could affect only NDTC's counterclaim for reimbursement of fees paid from December 1998 to March 2000. The fact that NDTC continued to make and approve payments through March 2000 and failed to notify BSI of the Satellite Lease termination is inconsistent with NDTC's claim that such fees were not due because a termination occurred earlier than April 2000. See, e.g., West Texas State Bank v. Tri-Service Drilling Co., Inc., 339 S.W.2d 249, 253 (Tex. App.-Eastland 1960, writ ref'd n.r.e.) (where circumstances of payment indicate intention on the part of payor to waive his rights, payment is voluntary and payor cannot recover money so paid, even if he had no obligation to make the payment). In denying NDTC any reimbursement for fee payments made from December 1998 to March 2000, the jury had to find either that NDTC did waive its right to the claim by continuing the payments or that NDTC's conduct prevented it from obtaining a refund.

BSI recognized the appropriateness of arguing waiver as a defense to the countersuit, both to the court in its Rule 50 motion for judgment as matter of law, as well as to the jury in closing arguments.[8] In that context and for that period of continuing

---

[8] See 9 R. 419-20, 427-28 (noting, during Rule 50 motion, inconsistency of NDTC's payments continuing until April 2000 with NDTC's position that the Fee Agreement terminated in December 1998 and how that could effect a waiver of NDTC's right to claim the back payments) & 9 R. 445 (discussing during closing argument

12

payments, a waiver argument was entirely appropriate. See Hruska v. First State Bank of Deanville, 747 S.W.2d 783, 785 (Tex. 1988) (recognizing waiver under Texas law as defensive in nature); West Texas State Bank, 339 S.W.2d at 253 (discussing waiver of right to claim reimbursement by one who voluntarily makes payments).

BSI's main demand for breach of contract, however, affects a later period, from the cessation of payments in April 2000 continuing through the longest possible term of the Fee Agreement, until December 2006. There is no question of the effect of NDTC's conduct after April 2000, because NDTC's payments did not continue after that date, and the lack of notice was corrected by then as well.[9] In short, from that date forward, there was no evidence of conduct inconsistent with NDTC's claim that the contract terminated.

NDTC's defense to BSI's main demand was that the Fee Agreement terminated by the termination of the Satellite Lease. BSI was fully aware that under the Fee Agreement, NDTC's obligation to continue monthly payments would cease upon termination of the Satellite Lease. BSI has demonstrated no factual or legal basis for waiver to apply to NDTC's defense to its main demand.[10] The

---

NDTC's payments and approval by top management in context of the countersuit).

[9] The undated letter (Ex. D-28) notifying BSI that termination of the Satellite Lease occurred in December 1998 was delivered April or early May 2000. 7 R. 69-75; 8 R. 223.

[10] Nothing in Insurance Co. of N. America v. Royer, 547 S.W.2d 350 (Tex. App.–Austin 1977, writ refused n.r.e.), addressed such a defense. Royer involved an insurance company defendant, sued by an agent for commissions on renewal premiums, seeking to defeat the

13

district court did not err in refusing an additional interrogatory on waiver.

D.   The "Sole Purpose" Instruction and Interrogatory.

As an alternative to the predicate questions noted above, BSI requested a broad form jury question in accordance with Texas Pattern Jury Charges on breach of contract: "Did NDTC fail to comply with the payment obligation under the Galaxy VII Agreement [Fee Agreement]?"  BSI complains that this interrogatory should have been used in lieu of the "sole purpose" interrogatory and that the accompanying jury charge was flawed as well.   The jury interrogatory given was whether NDTC terminated the Satellite Lease "for the sole reason of avoiding its obligation under the [Fee] Agreement."[11]

_____

claim by alleging an earlier termination of the contract based on the agent's breach of two provisions in the agency contract.  The trial court ruled for the agent, and the appellate court upheld the trial court's implied finding that the insurance company waived the two contractual provisions requiring the agent's compliance.  547 S.W.2d at 352.  NDTC never asserted that BSI terminated the Fee Agreement by noncompliance with any provisions of the Fee Agreement so as to raise a question of waiver of BSI's compliance with such provisions.
  Had the plaintiff in Royer been seeking renewal commissions under life insurance policies that had terminated by nonrenewal, the insurance company's obligations under the agency contract would have involved issues more similar to those before us today.

[11]   The court's "sole purpose" jury instruction was as follows:

  WTCI (which later became NDTC) . . . agreed that it would not terminate the [Satellite Lease] agreement for the sole purpose of avoiding its financial obligation under the [Fee] agreement.  Accordingly, if you find that NDTC terminated the [Satellite] lease for the sole purpose of avoiding its obligations under the Galaxy VII [Fee] agreement, then NDTC failed to comply with the [Fee] agreement.  Conversely, if you find that NDTC did not terminate the [Satellite Lease] agreement for the sole purpose of avoiding its obligations

14

In a diversity case, the substance of jury charges is governed by state law, but the form or manner of giving the instruction is controlled by federal law. Turlington v. United States Fidelity & Guar., 795 F.2d 434, 439, 441 (5th Cir. 1986). The charge must accurately describe the state law, but the court has wide discretion in formulating the charge. Id. at 441; Barton's Disposal, 886 F.2d at 1434 (recognizing that trial court is afforded "great latitude" in framing jury instructions and interrogatories). The Erie doctrine does not compel the use of pattern state instructions. Turlington, 795 F.2d at 441 n.3. Having rejected BSI's contentions that disputed facts were taken from the jury, we face only the question whether the district court abused its discretion in the selected charges and interrogatory.

The district court considered the proposed interrogatory from the Texas Pattern Charge to be too broad. The question whether NDTC had some reason to terminate the Satellite Lease other than escaping the fee obligation was the narrow issue that remained disputed. No other issue was implicated that did not go to the jury. We conclude that a) when read as a whole and in conjunction with the general charge, the interrogatories adequately presented the contested issues to the jury; b) the submission of the issues to the jury was fair; and c) the ultimate questions of fact were clearly submitted to the jury. See Dreiling v. General Electric

---

under the Galaxy VII [Fee] Agreement, then NDTC did not fail to comply with the [Fee] agreement.

The court's indiscriminate use of the phrase "the agreement" in the foregoing charge to refer to two distinct contracts is not at issue in this appeal.

<u>Co.</u>, 511 F.2d 768, 774 (5th Cir.1975) (reciting these three factors for inquiry when reviewing special interrogatories). Accordingly, we find no abuse of discretion in the court's selected interrogatory and charges. <u>See</u> <u>Barton's Disposal</u>, 886 F.2d at 1435 (equating <u>Dreiling</u> factors with test for abuse of discretion).

### III.

The court effectively granted partial summary judgment on the question whether the Satellite Lease terminated. Since no disputed issues of fact surround the question, the court appropriately refused to give this issue to the jury. The disputed issues bear only on NDTC's purpose for terminating the Satellite Lease, as implicated by the covenant of NDTC in the Fee Agreement. This properly went to the jury.

AFFIRMED.