# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 18-20394

In the Matter of:  Amerisciences, L.P.,

United States Court of Appeals
Fifth Circuit

**FILED**

July 11, 2019

Lyle W. Cayce
Clerk

    Debtor

RODNEY D. TOW, Successor Trustee, Chapter 7 Trustee of AmeriSciences, L.P.,

    Appellee

v.

ORGANO GOLD INTERNATIONAL, INCORPORATED; ORGANO GOLD ENTERPRISES, INCORPORATED; HOLTON BUGGS,

    Appellants

Appeals from the United States District Court
for the Southern District of Texas
USDC 4:16-CV-643

Before HAYNES, GRAVES, and DUNCAN, Circuit Judges.

PER CURIAM:*

## I.     Background

This appeal stems from a jury verdict and final judgment adjudicating

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-20394

Organo Gold International, Inc., Organo Gold Enterprises, Inc., and Holton Buggs (collectively, "Appellants")[1] liable to AmeriSciences, L.P., for trade secret misappropriation, tortious interference with contracts, unjust enrichment, fraudulent transfer, and breach of fiduciary duty. The final judgment awards AmeriSciences's bankruptcy trustee, Rodney Tow, compensatory damages of $3,461,166, with Appellants jointly and severally liable.

AmeriSciences was a multi-level marketing ("MLM") company that sold nutritional supplements through a network of distributors, many of whom were associated with the medical profession. The company was founded by president and CEO Barry Cocheu, chairman Louis Gallardo, and executive vice president Steve Redman. AmeriSciences's primary source of sales stemmed from its network of distributors, who served as both customers and sellers for the company. The network of distributors was an invaluable asset, essentially the "lifeblood" of the company. Between 2007 and 2011, AmeriSciences spent $6.2 million recruiting and retaining approximately 6,400 distributors. When a distributor joined AmeriSciences's network, it signed an agreement not to directly or indirectly solicit other distributors into other MLM organizations for the term of the agreement and one year thereafter. The agreements with distributors also declared the network and associated information proprietary and confidential.

Despite AmeriSciences's significant revenues, the company was in dire financial straits by the end of 2011—the company's balance sheet showed assets of $1.2 million with liabilities of $4.1 million. Cocheu and Gallardo did not believe AmeriSciences could survive as an MLM company and started

---

[1] For the purposes of this appeal, there is no distinction between the two Organo entities, so we refer them together as "Organo."

considering alternatives.

In early 2012, Cocheu and Gallardo began discussions with Holton Buggs about Organo, an MLM that sells coffee, weight management drinks, and health supplement products.  Buggs was an executive vice president of sales and marketing for Organo.  Buggs was also Gallardo's neighbor and met Cocheu in 2009.  After a trip together in January 2012, Cocheu and Buggs discussed a sale of AmeriSciences to Organo.

On April 3, 2012, Buggs sent Cocheu and Gallardo an email describing how Organo would acquire AmeriSciences's assets.  Buggs proposed Cocheu and Gallardo "cease the promotion of . . . AmeriSciences and solely promote Organo," "transfer the existing genealogy from AmeriSciences to Organo," and "provide Organo Gold a current official sales report."  In exchange, Appellants offered to pay Cocheu and Gallardo $50,000 per month in their personal capacities for up to nine months, with payments starting after the transfer of AmeriSciences's distributor network.  Cocheu e-mailed Buggs on April 4, 2012, asking for payments to him to begin on April 15.

On April 10, 2012, Cocheu and Gallardo met with ten of AmeriSciences's leading distributors and notified them that the company had decided to discontinue the MLM model, that AmeriSciences would no longer pay MLM commissions, and that Cocheu and Gallardo were leaving the company to join Organo.  Buggs spoke at the meeting about an opportunity with Organo.  However, a formal agreement memorializing the April 3 email was never drafted.

Cocheu also directed George Skirm, AmeriSciences's IT director, to work with Oliver Wang, an Organo IT professional, to transfer the entire distributor list.  On April 12, Buggs sent an email stating, "I just wanted to make the team aware that we will acquire the distributor base of an existing MLM company called AmeriSciences."  On April 19, Skirm emailed an Excel and plain-text file

No. 18-20394

containing the distributor list to Cocheu, who forwarded it to Wang and copied Buggs. AmeriSciences was never provided consideration for its distributor list. Organo also acquired AmeriSciences's Warehouse Management Software ("WMS") without consideration.

AmeriSciences ceased conducting business as an MLM by the summer of 2012, despite seeking to revamp its business under a retail model. AmeriSciences's bankruptcy commenced on October 4, 2012 as a Chapter 11 proceeding with Thomas Grace appointed as the trustee. After the matter was converted to a Chapter 7 proceeding, Rodney Tow succeeded Grace as the trustee. On May 9, 2013, a substantial portion of AmeriSciences's assets were sold to Supplement Research and Development, L.L.C. ("SRD").

In November 2014, Tow filed a complaint against twenty defendants for misappropriation of AmeriSciences's trade secrets, tortious interference with contracts, breaches of fiduciary duty, unjust enrichment, and fraudulent transfer. Gallardo and sixteen former AmeriSciences distributors settled with Tow for $110,000 prior to trial. By trial, the only remaining defendants were Cocheu, Organo, and Buggs. Organo and Buggs sought to exclude the testimony of Scott Weingust, Tow's damages expert, as unreliable under Federal Rule of Evidence 702. The district court denied the motion. Organo and Buggs also moved twice to dismiss the action, arguing Tow lacked standing to assert trade secret claims. The district court denied both motions.

After Tow rested at trial, Organo moved for a judgment as a matter of law under Federal Rule of Civil Procedure 50 for lack of legally sufficient evidence. The district court denied the motion. Organo also objected to the jury charge, requesting separate damages questions for each claim and instructions regarding the fraudulent transfer claim. The district court refused Organo's suggestions. The jury found liability on eight claims: (1) misappropriation of a trade secret by Cocheu, Organo, and Buggs; (2) tortious

4

No. 18-20394

interference by Cocheu, Organo, and Buggs with the contracts between AmeriSciences and its distributors; (3) breach of fiduciary duty by Cocheu; (4) aiding and abetting a breach of fiduciary duty by Organo and Buggs; (5) defalcation in a fiduciary duty by Cocheu; (6) unjust enrichment of Organo and Buggs through receipt of the distributor list; (7) fraudulent transfer via actual fraud by Cocheu of the distributor list and WMS software; and (8) fraudulent transfer via constructive fraud by Cocheu of the distributor list and WMS software. The jury answered $3,461,166.00 in the single blank for the dollar amount for damages.

Following the verdict and judgment, Organo and Buggs filed a renewed Rule 50 motion for judgment as a matter of law or, alternatively, for a new trial, which the district court denied. Tow filed a motion under Rule 59(e) to amend or alter the judgment to (1) find Organo and Buggs liable on the fraudulent transfer claims, and (2) add $610,682.44 in pre-judgment interest to the damages award. The district court granted Tow's motion to alter or amend. Organo and Buggs[2] filed a timely appeal from the amended final judgment and now make several arguments for why part or all of the damage award should be reversed or, in the alternative, that they are entitled to a new trial.

## II.  Discussion

### A. Appellants' 'Standing' Argument Is an Issue of Contractual Interpretation and Was Waived

Appellants challenge Tow's standing to recover trade secret damages under any theory of recovery by arguing that as of May 9, 2013, Tow sold the vast majority of AmeriSciences's assets to SRD under 11 U.S.C. §363(b), including the "rights to sue for past, present, or future violations or

---

[2] Cocheu did not appeal.

infringements" of AmeriSciences's software, trade secrets, distributorships and customer list (though expressly reserving the fraudulent transfer claim). Thus, Appellants assert Tow may not bring claims that do not belong to him.

Appellants, however, do not challenge Tow's Article III standing.[3] Rather, their argument pertains to whether Tow has a right to sue under AmeriSciences's agreement with SRD. But that issue is one of "contract interpretation" and addresses the merits of a potential breach of contract claim, which is "entirely distinct from 'standing' for purposes of Article III." *Cotton v. Certain Underwriters at Lloyd's of London*, 831 F.3d 592, 594 (5th Cir. 2016) (quoting *Novartis Seeds, Inc. v. Monsanto Co.*, 190 F.3d 868, 871 (8th Cir. 1999)); *see also Perry v. Thomas*, 482 U.S. 483, 487, 492 (1987) (explaining that a contention that plaintiffs "were 'not parties' to [an] agreement" did not raise an issue of jurisdictional standing). Because Appellants do not raise any non-waivable Article III or jurisdictional issues (and we find none), they were required to raise their contractual interpretation argument in their Rule 50 motions. "Generally, a party must make a pre-verdict Rule 50(a) motion and a [renewed] post-verdict Rule 50(b) motion to preserve the right to appellate review." *Thompson & Wallace, Inc. v. Falconwood Corp.*, 100 F.3d 429, 435 (5th Cir. 1996). Appellants, however, did not raise any arguments claiming AmeriScience's trustee was an improper party, interpreting AmeriSciences's contract with SRD, or 11 U.S.C. § 363(b) in *either* their pre-verdict Rule 50(a) motion or their post-verdict Rule 50(b) motion. "A party cannot 'renew' a motion it never made." *OneBeacon Ins. Co. v. T. Wade Welch & Assoc.*, 841

---

[3] Even if Appellants did make such a challenge, Tow has Article III standing. Article III standing requires a plaintiff to show that it has been injured, that the defendant caused the injury, and that the requested relief will redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Tow alleged AmeriSciences's trade secrets were misappropriated, that Appellants were liable, and Tow, in his capacity as trustee, would recover the damages awarded.

F.3d 669, 680 (5th Cir. 2016) (citations omitted).  Accordingly, we "lack power to address a claim not properly raised in a Rule 50(b) motion." *Id.*  Thus, "this issue is not properly before [the court]," as Appellants have waived it.  *Id.*

Moreover, Appellants' argument fails on the merits.  Appellants were not a party to the contract between AmeriSciences and SRD.  An individual who is "not a party to an agreement has no interest in the terms of that contract." *El Paso Cmty. Partners v. B&G/Sunrise Joint Venture*, 24 S.W.3d 620, 626 (Tex. App.—Austin 2000, no pet.) (citing *Imco Oil & Gas v. Mitchell Energy Corp.*, 911 S.W.2d 916, 920 (Tex. App.—Fort Worth 1995, no writ) (holding a non-party had no right to enforce contract terms)).  As Tow notes, even if Appellants' interpretation of the contract were correct, AmeriSciences and SRD would seek to reform the contract based on mutual mistake.  As a non-party, Appellants would have no basis to oppose any reformation.  *See Merrimack Mut. Fire Ins. Co. v. Allied Fairbanks Bank*, 678 S.W.2d 574, 577 (Tex. App—Houston [14th Dist.] 1984, write ref'd n.r.e.).  Thus, this newly-minted argument fails.

## B. The District Court Did Not Err When It Modified the Judgment to Include Fraudulent Transfer Liability

After the jury's verdict, the district court entered a final judgment stating, "Judgment is GRANTED in favor of Plaintiff and against Defendant Barry Cocheu on claims of breach of fiduciary duty, defalcation, fraudulent transfer (actual fraud), and fraudulent transfer (constructive fraud)."  There was no fraudulent transfer finding against Appellants.  Tow moved to amend the judgment under Federal Rule of Civil Procedure 59(e).  The district court granted the motion and amended the judgment to reflect fraudulent transfer findings.  Appellants argue the fraudulent transfer findings violate Federal Rule of Civil Procedure 49.

A grant or denial of a motion to alter or amend under Rule 59(e) is

reviewed for abuse of discretion. *Fletcher v. Apfel*, 210 F.3d 510, 512 (5th Cir. 2000).[4] Appellants assert that the district court violated Rule 49(a)(3), which states "[a] party waives the right to a jury trial on any issue of fact raised by the pleadings or evidence but not submitted to the jury unless, before the jury retires, the party demands its submission to the jury." Specifically, Appellants argue that the district court improperly waived their right to a jury trial when it refused their demand for a specific jury question on fraudulent transfer claims. Appellants, however, cite no case law to support the notion that Rule 49(a)(3) applies in such a manner.

Regardless, the jury was specifically instructed on fraudulent transfer as follows:

> Plaintiff Rodney Tow alleges that Defendant Barry Cocheu fraudulently transferred AmeriSciences' distributor list and WMS software to Defendants Holton Buggs, Organo Gold International, and Organo Gold Enterprises before AmeriSciences entered into bankruptcy. . . In order to establish a claim for actual fraudulent transfer, Plaintiff must establish each of the following elements by a preponderance of the evidence:
>
> 1. The distributor list and WMS software were the property of AmeriSciences;
>
> 2. The distributor list and WMS software were transferred to Defendants within two years before the filing of AmeriSciences' bankruptcy; and
>
> 3. AmeriSciences or its agent made the transfer with actual intent to hinder, delay, or defraud any existing or future creditor.

---

[4] Appellants argue for de novo review. *See Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379 (5th Cir. 2002) (noting questions of law in Rule 59(e) motions may be reviewed de novo in certain circumstances). Although we review for an abuse of discretion, given the overwhelming one-sided nature of the arguments, we would come to the same conclusion under de novo review.

The jury answered "yes" to the following questions: "Have Defendants Holton Buggs, Organo Gold International, or Organo Gold Enterprises been unjustly enriched?"[5]; "Did Defendant Barry Cocheu transfer the AmeriSciences distributor list or the WMS software with actual intent to hinder, delay, or defraud any creditor?"; and "Did Defendant Barry Cocheu transfer the AmeriSciences distributor list or the WMS software through a constructive fraudulent transfer?"  Appellants are correct that there was no specific question asking whether each Appellant was a transferee.  But the jury instruction expressly articulates that to find Cocheu liable for fraudulent transfer, the jury must find that the distributor list and WMS software were transferred to Organo and Buggs.  A district court has "substantial latitude in framing its instructions to the jury . . . even if a portion of the instruction is not technically perfect, [we] will affirm if the charge in its entirety presents the jury with a reasonably accurate picture of the law." *United States v. Flores*, 63 F.3d 1342, 1374 (5th Cir. 1995).  Here, the jury instruction "correctly reflect[s] the legal issues" in question. *Id*.  Given the instructions and answers, it is difficult to come to any other conclusion than the jury made the necessary findings for the district court to enter a fraudulent transfer liability judgment against Appellants.  Thus, the district court did not abuse its discretion in amending the judgment.

Appellants briefly make two other arguments:  first, that the distributor list was never transferred, and second, that there was no jury finding that AmeriSciences transferred the distributor list, only a finding that Cocheu did, so no fraudulent transfer is possible under 11 U.S.C. § 548.  These arguments ignore the facts of the case and the broad language of the relevant statutes.  The Texas Uniform Fraudulent Transfer Act "defines the term 'transfer'

---

[5] With respect to unjust enrichment, the jury answered "yes" as to each Appellant.

broadly to include 'every mode, direct, or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset.'" *Hometown 2006-1 1925 Valley View, L.L.C. v. Prime Income Asset Mgmt., LLC*, 847 F.3d 302, 307 (5th Cir. 2017) (quoting TEX. BUS. & COM. CODE § 24.002(12)). Sending electronically stored information via Excel and e-mail constitutes a transfer. Section 548 of the Bankruptcy Code, allowing a trustee to set aside "any transfer of an interest of the debtor in property," clearly encompasses the transfer here, [6] taking the facts in the light most favorable to the prevailing party.

## C. Prejudgment Interest Was Properly Awarded

After the verdict, Tow moved to amend the judgment under Rule 59(e), seeking prejudgment interest in the amount of $610,682.44. The district court granted Tow's motion. Appellants argue the district court erred because Texas Finance Code § 304.102 mandates prejudgment interest only for "tangible" property, and trade secrets are intangible property. But federal courts that have interpreted this provision have held "Texas law on trade secret claims mandates the award of prejudgment interest."[7] Appellants do not cite any authority to the contrary.

Even if awarding prejudgment interest was not mandatory, there is no dispute a district court can and usually *should* award prejudgment interest for trade secret claims. The Texas Supreme Court has held that there are "two

---

[6] The fraudulent transfer statute expressly allows for the trustee to recover for a transfer, within two years before the date of the filing of the bankruptcy petition, regardless of intent, so long as AmeriSciences received less than a reasonably equivalent value in exchange for the transfer of the distributor list and was insolvent at the time. *See* 11 U.S.C. § 548(a)(1)(B). The latter is not contested.

[7] *See Retractable Techs., Inc. v. Occupational & Med. Innovations, LTD.,* 6:08-CV-120, 2010 WL 3199624, at *4 (E.D. Tex. Aug. 11, 2010); *Myriad Dev., Inc. v. Alltech, Inc.*, 817 F. Supp. 2d 946, 990 & n.253 (W.D. Tex. 2011).

No. 18-20394

legal sources for an award of prejudgment interest: (1) general principles of equity and (2) an enabling statute." *Johnson & Higgins of Tex. Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998), superseded by statute on other grounds, TEX. FIN. CODE § 304.1045. Under Texas law, "an equitable award of prejudgment interest should be granted to a prevailing plaintiff in all but exceptional circumstances." *Am. Intern. Trading Corp. v. Petroleos Mexicanos*, 835 F.2d 536, 541 (5th Cir. 1987). Here, Appellants have not articulated any exceptional circumstances. Texas courts have awarded prejudgment interest in equity in misappropriation cases, *see Harper v. Wellbeing Genomics Pty Ltd.*, No. 03-17-00035-CV, 2018 WL 6318876, at *1 (Tex. App.—Austin Dec. 4, 2018, pet. filed), fraudulent transfer cases, *see In re Advanced Modular Power Sys., Inc.*, 413 B.R. 643, 685 (Bankr. S.D. Tex. 2009) (citing state cases), as well as for tortious interference claims. *See Sandare Chem. Co., Inc. v. WAKO Intern., Inc.*, 820 S.W.2d 21, 23 (Tex. App.—Fort Worth 1991, no writ).

Appellants also argue prejudgment interest is inappropriate because "[p]rejudgment interest may not be assessed or recovered on an award of future damages." TEX. FIN. CODE § 304.1045. Future damages can be characterized as "the monetary equivalent of the harm or injuries not yet actually sustained by the plaintiffs/appellees, but which they will suffer from the date of judgment forward in time." *Mo. Pac. R. Co. v. Lemon*, 861 S.W.2d 501, 529 (Tex. App.—Houston [14th dist.] 1993, writ dism'd by agr.). But Tow's damages expert did not extrapolate future damages from misappropriation of AmeriSciences's distributor list. Instead, he testified what a reasonable buyer would pay for the list at the time the company suffered injury. Although Appellants point to testimony where Weingust discusses the distributor list's future income potential, any assessment of current value of the distributor list would naturally consider what potential the list had at the time of the misappropriation. Therefore, § 304.1045 is inapplicable, and we affirm the

district court's addition of prejudgment interest.

## D. Separate Damages Questions Were Not Required

Appellants next argue that the district court erred when it refused to submit separate damage questions for each defendant and cause of action. District courts enjoy wide discretion in formulating jury charges. *Broad. Satellite Int'l Inc. v. Nat'l Digital Television Ctr., Inc.,* 323 F.3d 339, 347 (5th Cir. 2003). Any "challenges to, and refusals to give, jury instructions" are reviewed for abuse of discretion. *United States v. Ebron*, 683 F.3d 105, 151 (5th Cir. 2012). A jury instruction is reviewed to determine whether it "is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual issues confronting them." *Id.* at 152. A judgment should be reversed only if the jury charge leads to a "substantial and eradicable doubt [about] whether the jury has been properly guided in its deliberations." *Arleth v. Freeport-McMoran Oil & Gas Co.*, 2 F.3d 630, 634 (5th Cir. 1993).

The jury charge "correctly stated the law" and "clearly instructed jurors as to the principles of law applicable to the factual issues confronting them" with respect to: (1) misappropriation of trade secrets, (2) tortious interference with existing contracts, (3) breach of fiduciary duty, (4) aiding and abetting breach of fiduciary duty, (5) defalcation in a fiduciary duty, (6) unjust enrichment, (7) fraudulent transfer via actual fraud, and (8) fraudulent transfer via constructive fraud. Damages were also properly and clearly explained.

Appellants cite no authority for the proposition that a district court must provide separate damages questions for each defendant or claim where a plaintiff's claims had the same legal measure of damages and all stemmed from the same conduct. As the district court noted, there was no reason for "a different damage line for every cause of action when there's only one measure

of recovery." Moreover, Appellants were all found jointly liable for (and thus jointly responsible for the damages caused by) Cocheu's breach of fiduciary duty. *See Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 514 (Tex. 1942). Joint and several liability further makes separate damages questions unnecessary. Because the jury charge correctly stated the law, clearly instructed the jury, and the Appellants are jointly and severally liable, the district court did not abuse its discretion by submitting a single damages question.

### E. The District Court Did Not Err with Respect to Tow's Expert

Scott Weingust was hired to determine the value of AmeriSciences's distributor network and testified at trial as Tow's damages expert. Appellants sought to exclude Weingust's testimony for unreliability in a *Daubert* motion, which the district court denied. Appellants argue Weingust's testimony should have been excluded as unreliable because he used improper methods to calculate damages. Appellants also argue evidence of Organo's lost profits was improperly excluded. A district court's decision to admit or exclude evidence under Federal Rule of Evidence 702 is granted "wide latitude" and should be affirmed unless "it is manifestly erroneous." *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 692 (5th Cir. 2012) (quotation omitted). "This deferential abuse-of-discretion standard applies to both the expert's qualifications and to the reliability determination." *Id.*

Weingust concluded that the distributor network was worth approximately $3.451 million based on the following two methodologies: the cost approach showed AmeriSciences had incurred about $6.2 million over five years to develop the distributor network, attract new distributors, and retain existing ones. The income approach considers how long income is expected from the asset and the amount of income each year. Weingust concluded the income approach dictated the network would generate $700,327 over ten years.

Weingust testified that neither valuation method was better than the other, so he averaged the two to conclude the value of the distributor network was $3.451 million.

Weingust also prepared documents showing that 454 distributors from the 6,411 on the list had joined Organo, resulting in $57,067.80 in profit. Appellants contend this valuation, the lost profits approach, is the proper method to calculate trade secrets damages. But Texas "takes a 'flexible and imaginative' approach to damages calculation in trade secret misappropriation cases that allows calculation of damages based on defendant's avoided costs.'" *GlobeRanger Corp. v. Software AG U.S. of Am., Inc.*, 836 F.3d 477, 499 (5th Cir. 2016) (quoting *SW Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 710 (Tex. 2016)). In fact, Weingust's valuation method is expressly allowed— damages valuations may consider "the development costs the defendant avoided by the misappropriation . . . [and] [t]he costs a plaintiff spent in development . . . [which] can be a proxy for the costs the defendant saved." *Id.* In *GlobeRanger*, the Fifth Circuit affirmed a nearly identical damages valuation, noting that "[a]lthough a more precise damages model might have been possible, the district court's decision to allow testimony based on this measure was not manifestly erroneous." *Id.* at 500 (internal quotation omitted). That is exactly the case here. As in *GlobeRanger*, rather than challenging the reliability of a witness, Appellants instead challenge "the weight a factfinder should give the testimony." *Id.* (internal citations omitted). Yet Appellants "had the opportunity to try to convince the jury not to give full weight to [Tow's] expert's calculations," through their own expert, but did not

persuasively do so. *Id.* We therefore affirm the district court with respect to expert testimony.[8]

**F. Tow Presented Legally Sufficient Evidence for Each of His Claims**

Appellants next argue that they are entitled to judgment as a matter of law as to every one of Tow's claims. When reviewing a district court's denial of a post-verdict Rule 50(b) motion, we assess "whether a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *Nobach v. Woodland Vill. Nursing Ctr., Inc.*, 799 F.3d 374, 377–78 (5th Cir. 2015) (quoting FED. R. CIV. P. 50(a)(1)). We review a district court's ruling on a motion for judgment as a matter of law *de novo*. *Id.* All of Appellants' challenges to Tow's claims and the legal sufficiency of the evidence are assessed below. We hold there is legally sufficient evidence for a reasonable jury to find as it did for each claim, and affirm the district court in its entirety as to this issue. Because the value of the distributor list serves as Tow's evidence for several claims, we assess that issue first.

1. Evidence of the Value of the Distributors List

Appellants argue there is no evidence to value the distributors *list* because Weingust valued only the distributor *network*. Appellants claim the distinction between a "list" and a "network" is key but make no substantive argument supported by record evidence for why the two are different in a way that matters here. Appellants cite no authority for the proposition that there is a difference between a network and a list as a matter of law. To the contrary,

---

[8] Appellants also contend the district court abused its discretion in excluding their attempts to offer evidence of lost profits. Essentially, Appellants seek to show their misappropriation was not overly profitable. But this argument is also contradicted by *GlobeRanger*, which stated, "the wrongdoer should not benefit from hindsight perspective that its gamble of misappropriating the trade secret turned out not to be so profitable." 836 F.3d at 500.

both a distributor list and network can be trade secrets under Texas law: a trade secret includes any "compilation of information used in one's business, and which gives an opportunity to obtain an advantage over competitors who do not know or use it." *Nova Consulting Grp., Inc. v. Eng'g Consulting Servs., Ltd.* 290 F. App'x. 727, 734 (5th Cir. 2008) (citing cases) (quotations omitted). Trade secrets include "customer lists, client information, customer preferences, and buyer contacts." *Id.*

Weingust did consider the distributor network to include "relationships between the distributors and the company." But AmeriSciences also provided Organo with the distributor information including each distributor's upline number, address, email, phone number, Social Security Number, username, password, birthdate, status, entry date time, and lifetime rank. AmeriSciences updated the information to remove inactive distributors and modify genealogies to prepare for the transfer. Skirm even wrote a custom program to export all the distributor information into an Excel file to transfer to Appellants, a capability that did not previously exist. Whether this material is branded as a network or as a list, it was valuable information easily characterized as a trade secret.

There is an abundance of evidence for the valuation itself. Weingust testified about the methodologies he used to opine that the distributor list had a value of $3,451,166, including the amount AmeriSciences invested to develop the list and retain distributors, and Skirm testified about the value of such a list for an MLM company. Weingust also testified with respect to the value of WMS. Although Appellants' expert Gary Abadalla offered a differing opinion, the jury agreed with Weingust. Thus, a reasonable jury could find that the distributor list was valued appropriately.

2. Evidence for Use of a Trade Secret

Appellants challenge the sufficiency of evidence regarding the "use" of a

trade secret. "Use" of a trade secret includes "soliciting customers through the use of information that is a trade secret" or "relying on the trade secret to assist or accelerate research or development." *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 279 (5th Cir. 2012) (citation omitted). Tow presented evidence to fit this broad definition. For example, Appellants uploaded the distributor list into Organo's server and Buggs stated in an email, "I just wanted to make the team aware that we will acquire the distributor base of an existing MLM company called AmeriSciences." In addition, Cocheu stated the list was the "critical file that Oliver must have to input the organization tree for our group." Skirm testified that he sent the WMS software to Organo, and Organo attempted to integrate it. Therefore, a reasonable jury could conclude that Appellants had "used" a trade secret.

### 3. Evidence of Trade Secret Damages

As noted above, Texas law takes a "flexible and imaginative" approach to calculating damages in misappropriation of trade secrets cases. *S.W. Energy*, 491 S.W.3d at 710. This includes the "value a reasonably prudent investor would have paid for the trade secret, [and] the development costs the defendant avoided by the misappropriation." *Id.* at 711. Weingust testified about what a reasonably prudent investor would have paid for the trade secret *and* the development costs avoided by Appellants. Thus, there was legally sufficient evidence of trade secret damages for the jury to conclude as it did.

### 4. Evidence of Damages for Tortious Interference

Appellants next argue there was insufficient evidence of damages for tortious interference liability. Damages for tortious interference may include contract damages, unjust enrichment, lost profits, consequential losses, and actual harm to reputation. *See In re Performance Nutrition, Inc.*, 239 B.R. 93, 115 (Bankr. N.D. Tex. 1999) (citing state law cases). Tow cites evidence that Cocheu breached his agreement with AmeriSciences to support the jury's

verdict on tortious interference.[9]  But the jury question did not ask whether Cocheu tortiously interfered with his own contract with AmeriSciences, and a party cannot tortiously interfere with a contract to which he is a party to.  *See Latch*, 107 S.W.3d at 545.  Rather, Jury Question No. 2 asked, "Did any Defendant tortiously interfere with AmeriSciences' contracts with its distributors?"  The jury answered "yes" as to Cocheu, Buggs, and Organo.[10] AmeriSciences's distributor contracts barred distributors from sponsoring an existing AmeriSciences distributor into another MLM company, and included non-solicitation and confidentiality provisions.

The following evidence is in the record:  Cocheu, Gallardo, and Buggs met with high level AmeriSciences distributors to inform them Cocheu and Gallardo planned to move to Organo.  At that same meeting, Buggs spoke to the distributors about Organo products and the company to get distributors to join Organo.  Buggs admits "the evidence showed that a few of the large AmeriSciences distributors may have breached their contracts by encouraging other distributors to join Organo or providing Organo with information about

---

[9] Tow notes that Cocheu signed an agreement acknowledging AmeriSciences's distributor list was a confidential trade secret, along with "any other confidential information or data relating to the business" of AmeriSciences not publicly known.  Cocheu also agreed he would not use the trade secrets for his personal gain or disclose the distributor list. Further, emails between Buggs and Cocheu show that, without any formal agreement, Cocheu agreed to cease his work at AmeriSciences and begin promoting Organo; Cocheu would be paid $50,000 per month in his personal capacity after the transfer of the distributor list; and Cocheu sent the list to Buggs without AmeriSciences receiving consideration.

[10] Cocheu may have had a legitimate argument that he could not have been liable for tortious interference with AmeriSciences's contracts with its distributors because he was AmeriScience's agent: "[A]gents are not liable for tortious interference with their principals' contracts . . . ."  *Latch*, 107 S.W.3d at 545.  Only if the agents acts are "so contrary to the corporation's interests that his or her actions could only have been motivated by personal interest" is such recovery possible."  *Id.*  Although that probably was the case here, the jury was not asked that question.  In any event,  Cocheu did not appeal.  Organo and Buggs did not make the argument that, at these meetings, Cocheu was acting for AmeriSciences such that they could not be evidence of tortious interference.

their downline organizations." In addition to damages for unjust enrichment, which are discussed below, Weingust presented evidence for damages stemming from profit Organo earned from former AmeriSciences distributors.[11] Thus, there was sufficient evidence for a reasonable jury to conclude that Organo and Buggs tortiously interfered with AmeriSciences's contracts with distributors.

5. Evidence of Buggs's Personal Liability

Buggs argues there is legally insufficient evidence demonstrating he personally received and benefitted from the use of the distributor list. But Tow presented the following evidence at trial: Cocheu provided the distributor list directly to Buggs, who acknowledged receiving the distributor list, Buggs sent an email stating "I just wanted to make the team aware that we will acquire the distributor base of an existing MLM company called AmeriSciences," and Buggs also received AmeriSciences's downline information. Skirm and Weingust's testimony also supported the notion that having more distributors in one's downline means more earning potential. This constitutes legally sufficient evidence for a reasonable jury to conclude as it did.

6. Evidence of Damages for Breach of Fiduciary Duty and Unjust Enrichment

Appellants' last argument for judgment as a matter of law is that there was insufficient evidence to show damages for breach of fiduciary duty and unjust enrichment. Under Texas law, a corporate officer's or director's breach of fiduciary duty may result in liability for "any loss" the corporation may suffer as a result, including consequential damages. *Meyers v. Moody*, 693 F.2d 1196,

---

[11] Appellants argue Tow never tied evidence of Organo's profit to AmeriSciences's distributors breaching their contract with AmeriSciences. But evidence showing Buggs pitched AmeriSciences's distributors on Organo and that some of AmeriSciences's distributors joined Organo shows that Buggs and Organo's tortious interference contributed to their profits.

1214 (5th Cir. 1982). Further, a defendant is obligated to restore benefits to the plaintiff when a defendant is unjustly enriched via fraud. *Heldenfels Bros. Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Tow presented legally sufficient evidence for a reasonable jury to conclude as it did through Weingust's testimony regarding AmeriSciences's development costs to recruit and retain distributors and how much a reasonably prudent investor would have paid for the list.

### G. A Settlement Credit Should Be Applied

Finally, Appellants argue that the final judgment must be reduced by $110,000 because Gallardo and numerous distributor defendants settled prior to trial for that amount for identical claims to those for which the jury found Appellants jointly and severally liable. Under Texas law, "a plaintiff is entitled to only one recovery for any damages suffered" and a "nonsettling defendant is entitled to offset any liability for joint and several damages by the amount of common damages paid by the settling defendant." *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390–92 (Tex. 2000) (abrogated on other grounds). Tow concedes this point, agrees the judgment should be reduced by $110,000, and acknowledges we may issue a remittitur. *See Brunnemann v. Terra Int'l, Inc.*, 975 F.2d 175, 178 (5th Cir. 1992). Thus, we remand for the limited purpose of modifying the judgment to account for the settlement credits.

### III.    Conclusion

For the reasons stated above, we REMAND for the limited purpose of modifying the judgment as to the Appellants to account for the settlement credits. Aside from that sole issue, we AFFIRM the district court's judgment in its entirety.